Argued January 21; affirmed March 3, 1931

# CITY OF PORTLAND *v.*
# MULTNOMAH COUNTY ET AL.
### (296 P. 48)

*Charles S. Cohn*, of Portland (Stanley Myers, District Attorney, and Francis T. Wade, Deputy District Attorney, both of Portland, on the brief), for appellants.

*Frank S. Grant*, City Attorney, and *Willametta McElroy*, Deputy City Attorney, both of Portland, for respondent.

BELT, J. This suit was instituted for the purpose of determining whether certain real property owned by the city of Portland and used for corporate purposes is subject to taxation. Title to the three parcels of real property was acquired by the city after the taxes had been assessed on March first, but before any levy had been made. In other words, the property in question was in private ownership on the "tax day," but not at the time of the levy of the tax.

The trial court sustained a general demurrer to the answer of the defendants and, upon their refusal further to plead, entered a decree in favor of the plaintiff, holding that the real property involved is non-taxable.

Defendants concede that if the property had been acquired by the city on or before March first, it would be non-taxable, by virtue of subdivision 2 of section 69-104, Oregon Code 1930, which provides the following exemptions:

"All public or corporate property of the several counties, cities, villages, towns, school districts, irrigation districts and drainage districts, ports, tunnel districts, water districts, and all other municipal corporations in this state used or intended for corporate purposes, except lands belonging to such public corporations held under a contract for the purchase thereof."

It is their contention, however, that, since the property was, on the above date, in private ownership, the tax lien thereupon attached and could be satisfied only by payment. Defendants rely upon section 69-722 of the Oregon Code 1930, which provides:

" \* \* \* The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid, \* \* \*."

The city's theory is thus summarized in its brief: (1) Where property is acquired by a municipality after March first and before the tax levy is made, no levy can be made, hence no tax lien matures thereon. (2) The moment property is acquired by a subdivision of the state developing tax proceedings are arrested. (3) The property of a subdivision of the state is not subject to general tax laws. (4) Such property is not subject to sale for taxes.

■ It is clear that the state, in the exercise of its sovereign power, may tax property belonging to it or to any of the subordinate branches of the government, but, unless there is a clear legislative declaration of its intention so to do, such property is not taxable. The above statute exempting from taxation public property owned by a city, which is "used or intended for corporate purposes" is, in the main, merely declaratory of the common rule. As stated in *City of Eugene v. Keeney,* 134 Or. 393 (293 P. 924):

"Where such public corporations are involved, exemption is the rule and taxation the exception. As to private ownership of property, the rule is reversed."

The reason for the rule is thus expressed in *Portland v. Welch et al.,* 126 Or. 293 (269 P. 868), wherein Mr. Justice RAND, speaking for the court, said:

"Under our system of taxation, public revenues are derived from the taxation of property privately

owned and, in the absence of an express legislative declaration to that effect, it is unreasonable to suppose that the legislature intended that property belonging to the public should be taxed. No benefit to the public could arise from such taxation.''

■ It would be analogous to taking money out of one pocket and putting it into another. Furthermore, if public property could be sold for delinquent taxes, it might result in defeating the very purpose of the governmental agencies. It may, therefore, be said that it is against public policy to tax such property when devoted to a public use. In Cooley on Taxation (4th Ed.), § 621, it is said:

''Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. Such is the case with property belonging to the state and its municipalities, and which is held by them for public purposes. All such property is taxable, if the state shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is, therefore, a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the state and by all its municipalities for public purposes was intended to be excluded, and the law will be administered as excluding it in fact, unless it is unmistakably included in the taxable property by the constitution or a statute. Lands belonging to the state are not, therefore, to be entered for taxation, and if they are sold for taxes the sales are void and pass no title to the purchasers.''

 In our opinion, the general tax statutes have no application to the real property in question. The demurrer admits the allegation in the complaint that ever since the property was acquired by the city it "has been public property and continuously held and used by plaintiff for corporate purposes." It is, therefore, clearly exempt from taxation under the statute. If it be said that the lien attached on March first, we answer that, when the property passed from private ownership to the city of Portland, all tax proceedings were, by reason thereof, arrested and any thereafter had were of no force and effect.

*Logan v. Luukinen et al.*, 113 Or. 52 (231 P. 184), is not contrary to the conclusion here reached for the reason that what was said in that case, relative to the attachment of the tax lien, had to do with real property under private ownership. The question here presented was in no manner involved in the Logan case.

██ If, after the assessor had made a valuation of the property as of March first, no other steps had been taken in the tax proceedings provided by statute, no lien would have attached—assuming that the property was taxable. It is only when the amount of the tax has been determined and levied that the lien relates and attaches as of the date specified by the statute. Of course, the doctrine of relation presupposes the creation of a valid tax. If the property is nontaxable, the doctrine has no application. Viewing the case from any angle, we are convinced that no valid and enforceable lien is upon the land which passed to the city prior to the levy of the tax. In support of such conclusion, see *State v. Snohomish County,* 71 Wash. 320 (128 P. 667); *Gasaway v. Seattle,* 52 Wash. 444 (100 P. 991, 21 L. R. A. (N. S.) 68); *State v. Locke,* 29 N. M. 148 (219 P. 790, 30 A. L. R. 407); *Foster v. Duluth,* 120 Minn. 484

(140 N. W. 129, 48 L. R. A. (N. S.) 707) ; *City of Laurel v. Weems,* 100 Miss. 335 (56 So. 451, Ann. Cas. 1914A, 159) ; *Reid v. State,* 74 Ind. 252; *Gachet v. New Orleans,* 52 La. Ann. 813 (27 So. 348) ; *Territory ex rel. Devine v. Perrin,* 9 Ariz. 316 (83 P. 361). We are not unmindful that the contrary view is expressed in *City of Santa Monica v. Los Angeles County,* 15 Cal. App. 710 (115 P. 945), wherein the city which acquired real property after the ''tax day'' was held liable for state and county taxes subsequently levied. However, see the later case of *Smith v. City of Santa Monica,* 162 Cal. 221 (121 P. 920), wherein the court said:

''The state does not tax the property of a municipality for state and county purposes because this would be a taxation of its own property. For the same reason, when the property has come into the ownership of a municipal corporation, it will not attempt to enforce the tax by the sale of the property.''

While the court did not expressly repudiate the earlier case, it might well have done so, for we are unable to see any reasonable ground for distinction. Nor can we agree with *Triangle Land Co. v. City of Detroit,* 204 Mich. 442 (170 N. W. 549, 2 A. L. R. 1526), wherein property owned by a municipal corporation, upon which a firehouse was erected at a cost of $20,000, was sold to satisfy a lien for delinquent taxes. On account of the neglect of the city officials, the public was deprived of the use of this property and it passed to the purchaser at the sale for a mere song. The dissenting opinion therein by Mr. Justice Brook is more in keeping with our views.

The judgment of the lower court is affirmed.