Argued September 9, affirmed October 22, petition for
rehearing denied November 26, 1952

## HOLMAN TRANSFER CO. ET AL. *v.*
## CITY OF PORTLAND ET AL.

249 P. 2d 175
250 P. 2d 929

552

*C. D. Christensen,* of Portland, argued the cause for appellants. With him on the brief were Clark & Clark, of Portland.

*Dan M. Dibble,* Deputy District Attorney, of Portland, argued the cause for respondents. With him on the brief was John B. McCourt, District Attorney for Multnomah County, of Portland.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, WARNER and TOOZE, Justices.

LUSK, J.

This is a suit for a declaratory decree brought to determine whether certain real property owned by the

defendant, City of Portland, and leased by the city to the plaintiffs, Holman Transfer Company, a corporation, and Rudie Wilhelm Warehouse Company, Inc., a corporation, is exempt from taxation for the fiscal year 1948-49 under the provisions of an act of the legislature passed in 1947 hereinafter set out. Defendants are the City of Portland, Multnomah County and others. The court entered a decree declaring that the property was not exempt from taxation for the year in question and that the tax levied for that year was lawful and valid. Plaintiffs appeal.

The relevant facts were stipulated by the parties as follows:

"That it is admitted for all purposes in this suit that prior to January 1, 1947, the defendant City of Portland, acting by and through its Commission of Public Docks, entered into a lease in writing with Pope & Talbot, Inc. whereby all of the property involved in this suit was leased to said Pope & Talbot, Inc., and, pursuant to said lease, said Pope & Talbot, Inc. entered into possession of all of the said property and continued in such possession as lessee from the City of Portland under said lease until on or about October 14, 1947, and that prior to July 1, 1947, the plaintiffs subleased said premises from said Pope & Talbot, Inc. and thereafter occupied the premises as such subtenants until October 14, 1947, and that on or about October 14, 1947, the plaintiffs, as lessees, and the Defendant City of Portland, acting through its Commission of Public Docks, as lessor, entered into a lease in writing by the terms of which said premises were leased to plaintiffs for a term of years; that a copy of said lease is attached to, as a part of, plaintiffs' complaint; that subsequent to October 14, 1947, plaintiffs were in possession of said premises as lessees under said lease of October 14, 1947."

The only provision of the lease material to the controversy reads:

"The Lessees agree, upon billing by Lessor, promptly to pay to Lessor all taxes that may be levied against the demised premises under authority of Chapter 382, Oregon Laws, 1947, or any other law or statute, from the time that the Lessees take possession thereof until the expiration of this lease, or any renewal thereof; taxes for fractional parts of fiscal years shall be pro-rated."

The legislation to be construed is found in Secs. 1 and 2, ch 382, Oregon Laws 1947. Section 1 is a new provision, and Sec. 2 amends Sec. 110-201, OCLA, as amended by ch 296, Oregon Laws 1945. So far as now material they read:

"Section 1. All real property of this state or any institution or department thereof or of any county or city, town or other municipal corporation or political subdivision of this state, *held* under lease or rented by any person, corporation or association whose real property, if any, is taxable, shall be subject to assessment and taxation for the true cash value thereof uniformly with real property of non-exempt ownerships; *provided, however, that real property owned by any city or town, or any dock commission or port, and held under a lease heretofore executed, or rented under an agreement heretofore executed, by any person, corporation or association, whose real property, if any, is taxable, shall not become subject to assessment and taxation for the fiscal year 1947-1948, and for the fiscal year 1948-1949;* * * *

"Section 2. That section 110-201, O.C.L.A., as amended by chapter 296, Oregon Laws 1945, be and the same hereby is amended so as to read as follows:

"Sec. 110-201. The following property shall be exempt from taxation:
* * * * *

556

"(3) All public or corporate property of the several counties, cities, towns, school districts irrigation districts, drainage districts, ports, water districts and all other public or municipal corporations in this state used or intended for corporate purposes, except real property belonging to any such public or municipal corporation and *held* under a contract for the purchase thereof, and except, further, real property *held* under a lease or other interest or estate in such real property less than the fee simple; *provided, however, that real property owned by any city or town or any dock commission or port, and held under a lease heretofore executed, or rented under an agreement heretofore executed, by any person, corporation or association, whose real property, if any, is taxable, shall not become subject to assessment and taxation for the fiscal year 1947-1948, and for the fiscal year 1948-1949"*. (Italics added.)

We have italicized the provisos in both sections as the case concerns itself primarily with their construction. As they are couched in identical language, we shall speak simply of "the proviso".

As the stipulation shows, the property was in possession of Pope & Talbot, Inc. from some time prior to January 1, 1947, until about October 14, 1947, under a lease from the City of Portland. We may observe in passing that nothing is claimed for the fact mentioned in the stipulation (and we deem it immaterial) that the plaintiffs were in possession of the property for a period as sublessees under Pope & Talbot, Inc. The plaintiffs' lease from the city commenced October 14, 1947, at which time they entered into possession of the property and so continued through the fiscal year 1948-49.

We shall assume for the purposes of this opinion, what probably is the law, that the word "heretofore"

in the phrase "under a lease heretofore executed" refers to the effective date of the Act, which was July 5, 1947.

The precise question is whether real property of the city, held by the plaintiffs under a lease which was executed after the Act had become effective, is exempt from taxation for the year in question because, at the time of the effective date of the Act, it was held by a different party under a different lease theretofore executed. Plaintiffs assert that the proviso creates such an exemption. We do not agree.

The theory behind the legislation, it may be reasonably assumed, is that even publicly owned property should pay its share of the cost of government when in the hands of a private person and devoted to a private use. The legislature, however, evidently deemed it expedient to provide that during the two fiscal years following passage of the Act property then held under a lease executed before adoption of the new taxing policy should be exempt, for the obvious reason that such leases had been entered into at a time when the property was exempt from taxation, and, of course, took no account of a tax liability which then did not exist. After the Act became effective, however, the municipality and the prospective lessee could make their agreement with the knowledge that the property was subject to taxation. The municipality would be enabled, as the City of Portland did in this case, by a provision in the lease to pass on the obligation to pay the tax to the lessee. No doubt such agreements were very much in the minds of the legislature. While it is true that the tax is not against the owner but against the property, still we are dealing with a statute which makes the question of exemption or no

exemption dependent upon whether or not the property is held under lease by a person whose real property is taxable. The courts have more than once observed that taxation is an exceedingly practical matter. In *Knapp v. Josephine County,* 192 Or 327, 353, 235 P2d 564, this court said, "we think that all tax statutes should be construed in as practical a manner as possible." In most instances the owner does pay the tax, and taxes are an important consideration in agreeing on the terms of a lease of taxable land. The legislature, of course, was not unaware of these facts. Indeed, an amendment passed in 1949, and which we shall again have occasion to mention, indicates very clearly that the legislature by then had concluded that the respite for only two years was not sufficient, and that the exemption should continue during the full term of leases executed prior to the effective date of the 1947 Act—undoubtedly because of hardships which would otherwise result in cases of leases executed before adoption of the Act and not yet expired.

The argument has centered upon the meaning of the phrase "held under a lease heretofore executed" in the proviso. Plaintiffs' contention involves the somewhat remarkable proposition that although the property was held by them during the fiscal year 1947-48 under a lease *executed after the Act became effective,* the legislature intended that it should be exempt from taxation during that year because, before the Act became effective, it had been leased to a different person; or, in other words, that the question of exemption of leased property was to be wholly dependent on its status prior to, or at the time of, the effective date of the Act. Underlying this contention are two fundamental errors. One results from a failure to read correctly and grammatically the phrase just quoted; the other is the as-

sumption that the phrase is plain and unambiguous, that it can have but one meaning, and that is the meaning which the plaintiffs ascribe to it, and therefore that it is not open to construction.

The former of these errors is revealed in the following quotation from the plaintiffs' brief:

"* * * The word 'held', in this case, is modified by the phrase 'heretofore executed'. The trial court ignored such modifying words. If the modifying words had not been ignored, we submit that the court could not have arrived at the decision reached."

■ This is a misreading of the phrase. The word "heretofore" does not modify "held". It modifies "executed". The legislature did not speak of *property* "heretofore held". It spoke of a *lease* "heretofore executed". Property can be *held* two or ten years hence under a lease heretofore executed. The time when the property must be held under a lease heretofore executed in order to receive the benefit of the exemption is not expressly stated. The word "held", as used here, has no connotation of time and is therefore ambiguous. It must be construed in its context and with reference to the legislative purpose and intent.

It so happens that substantially the identical question of interpretation was presented in the case of *Starr v. Case,* 59 Ia 491, 13 NW 645. There the court was called upon to construe a provision in articles of co-partnership which excepted from the obligation of each partner to give his whole time and attention to the interest of the firm "such time as may be proper for the fulfilling of the duties of any office or agency *held* individually by either partner" (italics added).

A contention similar to that of the plaintiffs here was thus answered by the court (59 Ia 495):

"* * * Appellants insist that the word *held* is in, past and present tense, and applies only to offices or agencies held by a partner when the co-partnership was formed. This we think is not the proper construction of the exception. The word *held* is the perfect participle of the verb *hold*.

" 'Participles have no reference to time, they simply show the action, being or state of the verb from which they are derived as finished or unfinished.' See Welch's Analysis of the English Sentence, page 87. It is evident from the context that the members of the partnership contemplated their probable future as well as their present relations, when they provide, that 'neither partner shall accept or continue to hold any office or agency unless by the consent of his co-partners.'

"The meaning of the word *held* is not to be determined simply from its form, but from its relation to other parts of the contract, and it must be so construed, if possible, as to give force and effect to all parts of the agreement. The word, whether considered grammatically or in relation to other parts of the contract, cannot legitimately be limited to an office or agency in the possession of one of the partners when the contract was formed, but includes any office or agency of which a partner might become possessed at any time during the continuance of the co-partnership."

■ Here the legislative purpose was to subject to taxation municipally owned leased property. The Act looks to the future, not to the past. It lays down a taxation policy for the years to follow its passage. The exemption in the proviso, like the rest of the Act, has to do with the status of the property with respect to a lease at the time that the tax is levied (see Oregon Laws 1941, ch 440, Secs. 21, 22, Sec. 110-829, OCLA,

as amended by ch 357, Oregon Laws 1945) ; not at some other time utterly irrelevant to any conceivable legislative purpose. The word "held" in the proviso, as the circuit court correctly declared in its decree, means "held at the time that the tax was levied and  *  *  * not  *  *  * held at the time of the effective date of the act." As applied to this case the entire phrase is intended to exempt "property of the City of Portland held during the fiscal year, 1948-49, under a lease executed before July 5, 1947." So construed, the proviso has sense and purpose; as construed by the plaintiffs, it has neither, and no one contends that it has.

■ Other considerations emphasize the correctness of this view. In construing particular words or phrases in a statute courts do not treat them as though they stood alone, but examine the entire statute to ascertain the sense in which the particular words are used.

It is to be observed that the word "held" is used more than once in the 1947 Act. Section 1 provides for the taxation of property of states and municipalities "held under lease", etc. Section 2 amends the exemption statute by removing the exemption theretofore enjoyed by real property of muncipial corporations "held under a lease". We take it no one would argue, or even suggest, that the word "held", as used in these two provisions of the Act, means "held at the time that this Act takes effect". Obviously the legislature had in mind the status of the property at the time of the levy of a tax. That, indeed, is what the statute is all about. Will it be said that the legislature intended that municipally owned property under lease on July 5, 1947, the effective date of the Act, was intended to be subjected to taxation for the fiscal year 1948-49, although it was then not under lease? We believe that all would agree that this would be an absurdity.

Or would any one apply the rule to the enacting clause, which is invoked in the case of the proviso, that the legislature is deemed to be making use of its words as of the date the Act becomes effective? Surely not, for the reason that such an application of this rule would make the entire statute meaningless. The same thing could be affirmed of Sec. 1, ch 202, Oregon Laws 1947, which subjects to taxation real property of the United States held "under contract of sale, lease", etc. Obviously the word "held" in that statute refers to the time when a tax is levied and not to some time irrelevant to the legislative purpose. What reason, then, can be brought forward for attaching to the word "held" in the proviso a different meaning than it bears in the enacting clause? No reason has been suggested, and we think that none can be found. Indeed, if the view which the plaintiffs take is correct it follows that the words "heretofore executed" are surplusage. They were not needed at all, because in every case of property held under a lease on the effective date of the Act such lease was necessarily "heretofore executed". It would be impossible on July 5, 1947, the effective date of the Act, to hold property under a lease which was not executed until after July 5, 1947. It must be presumed, however, that these words were used with a purpose. That purpose was to distinguish between property held at the time of levy of the tax under a lease *hereafter* executed and property held under a lease *heretofore* executed, not to distinguish between property held on July 5, 1947, and property thereafter held.

■ The appropriate function of a proviso is to restrain or modify the purview of a statute in which the proviso is found. *Olson v. Heisen,* 90 Or 176, 178, 175 · P 859. In this instance the function of the proviso was

to restrain the purview of the enacting clause which subjected to taxation municipally owned property held under a lease at the time the tax was levied, to the end that this provision would not apply in the case of leases "heretofore executed".

■ It is the words "heretofore executed" which define the limits of the proviso. The words "held under a lease" in the proviso do not have a different meaning from those words in the enacting clause. The rule on that subject, as stated in 59 CJ 1003, Statutes, Sec. 597, was quoted by this court with approved in *In re Norton's Estate,* 177 Or 342, 347, 162 P2d 379, 161 ALR 439, as follows:

"In the absence of anything in the statute clearly indicating a contrary intent, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and where its meaning in one instance is clear, this meaning will be attached to it elsewhere, * * * *."

See, to the same effect, *Lasene v. Syvanen,* 123 Or 615, 624, 257 P 822, 263 P 59. The sense in which the word "held" is used in the enacting clauses of the statute is clear. We are not at liberty to say that it is used in a different sense in the proviso, especially when to do so is to impute to the legislature a purpose to do a nonsensical thing.

■ It is urged by plaintiffs that property belonging to the state and its municipalities and which is held by them for public purposes is presumptively exempt from taxation (citing *Portland v. Multnomah County,* 135 Or 469, 296 P 48; Cooley on Taxation (4th ed), Sec. 621), and therefore that a strict rule against taxation is to be applied. Whether this is so when the legislature has adopted a policy of taxation of state and mu-

nicipally owned property, not devoted to a public use but held in private hands under lease, is a highly debatable question. We shall not stop to examine it. It is sufficient to say that rules of the kind invoked are mere aids to construction and come qualified with the rule "that that sense of the words is to be adopted which best harmonizes with the context, and promotes in the fullest manner the policy and object of the Legislature." Endlich, Interpretation of Statutes, 466, Sec. 337. "The paramount object", says the learned author in the same section, "in construing penal as well as other statutes, is to ascertain the legislative intent; and the rule of strict construction is not violated by permitting the words to have their full meaning, or the more extensive of two meanings, when best effectuating the intention." The rule of strict construction, even though it were conceded to be applicable here, cannot be so used as to defeat the apparent legislative purpose. *Swift & Co. v. Peterson,* 192 Or 97, 123, 233 P2d 216.

Much is said in argument about the evils of judicial legislation. We are repeatedly reminded of the duty of courts to refrain from construction when the language of a statute is plain and unambiguous, and we are told that the circuit court's decision violates the rule against inserting in a statute what has been omitted. Sec. 2-216, OCLA. We have already seen that the proviso is not unambiguous. Plaintiffs' own construction, indeed, can only be reached by reading into the proviso, after "held", the words "at the time that this Act takes effect", or similar language.

Plaintiffs' argument throughout ignores the cardinal rule of stautory construction that it is the court's duty to pursue the legislative intent, if possible. Sec. 2-217, OCLA. If it is necessary to import words

into the statute in order to give effect to the obvious
and plain meaning of the legislature that will be done.
*Cabell v. Cottage Grove,* 170 Or 256, 272, 130 P2d
1013, 144 ALR 286; *Barrett v. Union Bridge Co.,* 117
Or 566, 570, 245 P 308, 45 ALR 527. When a literal
application of the language produces an absurd or un-
reasonable result it is the duty of the court to construe
the act, if possible, so that it is a reasonable and
workable law and not inconsistent with the general
policy of the legislature. *Swift & Co. v. Peterson,* supra
at 111, *Fox v. Galloway,* 174 Or 339, 347, 148 P2d 922,
and Oregon cases there cited. A statute is to be con-
strued with reference to its manifest object, and, if
the language is susceptible of two constructions, one
which will carry out and the other defeat such manifest
object, it should receive the former construction. 2
Sutherland, Statutory Construction (3d ed), 338, Sec.
4704. And, as stated in Endlich, op. cit., 399, Sec. 295:

> "Where the language of a statute in its ordinary
> meaning and grammatical construction, leads to a
> manifest contradiction of the apparent purpose of
> the enactment, or to some inconvenience or absurd-
> ity, hardship or injustice, presumably not intended,
> a construction may be put upon it, which modifies
> the meaning of the words, and even the structure
> of the sentence."

Here it is unnecessary to modify the meaning of
words or the structure of the sentence, but only to read
the sentence correctly and grammatically and to inter-
pret the word "held" to harmonize with the legisla-
tive purpose. It may be added that we have yet to
hear from those supporting the plaintiffs' view any
contention that the meaning they place upon the pro-
viso brings about a reasonable result or tends to carry
out, rather than defeat, the object of the statute.

We have referred to an amendment to the Act under consideration adopted in 1949. This is found in ch 395, Oregon Laws 1949. So far as now pertinent, it exempts from taxation: "Real property owned by any municipality, or any dock commission or port organized under the laws of this state, to the extent to which such property is either (a) * * *, (b) held under a lease or rental agreement executed for any purpose prior to July 5, 1947, provided that this exemption shall continue only during the term of such lease or rental agreement in effect on said date, or (c) * * *."

The defendants say that the amendment tends to support their position as a legislative construction of the 1947 Act.

■ This court, in common with others, has held that an amendment to an act may be resorted to for the discovery of the legislative intention in the enactment amended. *Layman v. SIAC,* 167 Or 379, 400, 117 P2d 974. See, also, 50 Am Jur 328, Statutes, Sec. 337. As stated in the discussion of this subject in 2 Sutherland, op. cit., Sec. 5110, "it is just as probable that the legislature intended to clear up uncertainties, as it did to change existing law where the former law is changed in only minor details." And this eminent authority approves the following test for determining the question from *People v. Davenport,* 91 NY 574, 591-592:

"The force which should be given to subsequent, as affecting prior legislation,.depends largely upon the circumstances under which it takes place. If it follows immediately and after controversies upon the use of doubtful phraseology therein have arisen as to the true construction of the prior law it is entitled to great weight. * * * If it takes place after a considerable lapse of time and the intervention of other sessions of the legislature, a radical change of phraseology would indicate an intention

to supply some provisions not embraced in the former statute.''

As is apparent from a comparison of the 1949 amendment with the 1947 Act, one purpose of the amendment was to prolong the exemption granted by the proviso in the 1947 Act in favor of property held under unexpired leases executed before July 5, 1947, the effective date of the latter Act. It was evidently the judgment of the legislature that the same reasons which suggested the propriety of such an exemption for the fiscal years 1947-48 and 1948-49, required that the exemption should continue as long as the terms of such leases continued. The legislature expressed that purpose in this language, ''Provided that this exemption shall continue only during the term of such lease or rental agreement in effect on said date'' (that is, July 5, 1947). Another apparent purpose was to remedy a defect in the 1947 Act by limiting the exemption to the term of the pre-existing lease. Under the 1947 Act it would seem that the property was not taxable for the fiscal year 1947-48 since it was held under a pre-existing lease to Pope & Talbot, Inc. in July, 1947, when the tax for that year was levied, Oregon Laws 1941, ch 440, Secs. 21, 22, and when the tax, if valid, would have become a lien on the property, ch 357, Oregon Laws 1945.

The amendment makes no other changes in existing law, and it is arguable that it was adopted with the further purpose of ''clearing up uncertainties'' about the question now before us. The amendment was adopted at the next ensuing session of the legislature after the enactment of ch 382, Oregon Laws 1947. It was approved by the governor April 14, 1949. This suit was commenced July 26, 1949, a little more than three months later. It is not a rash assumption that

the controversy over the construction of the statute to which Multnomah County, the City of Portland, the Commission of Public Docks of the City of Portland, and the Attorney General were parties had already arisen when the 1949 Act was introduced, considered and passed. These circumstances, under the authorities cited, tend to support the defendants' view of the matter. At best, however, any inference of this sort attempted to be drawn from the language of the 1949 amendment is based in large measure on speculation. Once the statute whose construction controls decision of this case is carefully analyzed in all its parts and as a whole, and with due regard to its manifest object, its meaning becomes so clear that resort to subsequent legislation as an aid to interpretation is unnecessary.

The judgment of the circuit court is affirmed.

TOOZE, J., dissenting.

I cannot agree with the court's holding in this case. I have no fault to find with the rules of statutory construction announced and relied upon by the court, but I deny their applicability to the statute under consideration.

In my opinion, the language of the statute is plain and unambiguous. In such circumstances, a court is never permitted to resort to and apply rules of statutory construction, as the court has done in this case, in order to arrive at a conclusion which it may deem to be desirable. That amounts to judicial legislation. I frankly concede that, if the language used in the statute is, in truth, ambiguous, the court is not only justified, but also compelled, to adopt and apply rules of statutory construction in an endeavor to ascertain the legislative intent.

But it is my firm belief that the court created an

ambiguity where no ambiguity exists. Having done so, it then proceeded to apply rules of statutory construction in order to support its conclusion respecting the intent of the legislature. This is equivalent to creating a straw man and then proceeding to knock the stuffing out of him.

It is axiomatic that, when the legislature, in adopting an act, makes use of plain, unambiguous, and understandable language, it is presumed to have intended precisely what its words imply. There is no occasion to go beyond those words and their plain meaning to ascertain, by the application of rules of statutory construction, the legislative purpose. The act speaks for itself.

In 59 CJ, Statutes, 952, § 569, it is stated:

> "The intention of the legislature is to be obtained primarily from the language used in the statute. * * * Where the language of a statute is plain and unambiguous, there is no occasion for construction, even though other meanings could be found; and the court cannot indulge in speculation as to the probable or possible qualifications which might have been in the mind of the legislature, but the statute must be given effect according to its plain and obvious meaning, and cannot be extended beyond it because of some supposed policy of the law, or because the legislature did not use proper words to express its meaning, or the court would be assuming legislative authority."

In *Fox v. Galloway*, 174 Or 339, 347, 148 P2d 922, Mr. Justice BAILEY, now retired, stated the following rule as applied to statutes that are unambiguous in the language used:

> "If the language used is plain and unambiguous, if it can be given but one meaning, and that meaning does not lead to an impossibility or an absurdity

such as the legislature could not be supposed to have intended, the court must give effect to that meaning if constitutional, even though the result may be, in the court's opinion, harsh, unjust or mistaken in policy  * *  *."

Inasmuch as it is the public policy of this state to exempt from taxation publically-owned properties, whenever an act is adopted that is contrary to that policy, such act should be and is strictly construed. Under the guise of interpretation, the court should not add to nor subtract from such a statute. Moreover, it is elementary that a statute imposing a tax should always be construed most strongly against the taxing power and in favor of the taxpayer.

It is frankly conceded that, as a general rule, a claim of exemption from taxation by virtue of a statute is construed strictissimi juris. 26 RCL, Taxation, 313, § 274; 61 CJ, Taxation, 392, § 396; 51 Am Jur, Taxation, 526, § 524.

In 51 Am Jur, Taxation, 526, § 524, it is said:

"The fundamental theory of the tax structure of the several states is that all taxable property should bear its fair share of the cost and expense of government; and while property is taxable only when declared so by legislative enactment, the law does not read into the taxing statutes any implied exemption of particular property or particular property owners unless the intendment of the statute to make an exemption is plain. When the statute purports to grant an exemption from taxation, the universal rule of construction is that the tax exemption provision is to be construed strictly against the one who asserts the claim of exemption  * *  *. An exemption from taxation must be clearly defined and founded upon plain language, without doubt or ambiguity. Whenever doubt arises it is to be resolved against the exemption  * *  *."

But this rule of strict construction applies only to private property, and it has no application to municipally-owned properties. In 51 Am Jur, Taxation, 553, § 562, the rule is stated:

"*The rule of strict construction* of tax exemption statutes and the general rule that tax exemptions cannot rest on implication *have reference to private property, and not to property of municipal corporations,* which is generally regarded as exempt from state taxation notwithstanding the absence of any provision either in the state constitution or in the general statutes granting such exemption  *  *  *." (Italics supplied.)

In the instant case, the exemption is clearly defined and founded upon plain and unambiguous language and, therefore, fully meets the test of strict construction, though that is unnecessary. An exemption from taxation of property owned by a municipal corporation should be liberally, and not strictly, construed.

The first part of § 1 of the 1947 Act effects a change in public policy. Certain publically-owned properties theretofore exempt from taxation are rendered taxable. Section 1 in part provides:

"All real property of this state or any institution or department thereof or of any county or city, town or other municipal corporation or political subdivision of this state, held under lease or rented by any person, corporation or association whose real property, if any, is taxable, shall be subject to assessment and taxation for the true cash value thereof uniformly with real property of non-exempt ownerships;  *  *  *."

This is an all-inclusive provision. Not only is all property owned by the state, and by its several institutions and departments, and held under lease or rented by any person, corporation or association whose

real property is taxable, subjected to taxation, but also all properties so held and owned by any county, city, town or other municipal corporation or political subdivision of the state. Of necessity, this Act is prospective in operation, not retrospective. But the legislature spoke as of the time the act became effective; that is, as of July 5, 1947, and on that day tax liability under prescribed conditions was definitely fixed. Manifestly, under the plain and unambiguous wording and meaning of this portion of the statute, no tax could be imposed unless at the time of levy the conditions necessary therefor existed. We need not resort to any rules of statutory construction to arrive at that conclusion. But, in that connection, it is interesting to note that, in using the words "held under lease or rented" in this part of the Act, the legislature omitted the words "heretofore executed" as thereafter used. The provision under discussion is absolute in its terms, plain and understandable, and without any qualifying words whatever.

Having thus subjected the properties of the state and all other public and quasi-public corporations to taxation under certain conditions, the legislature could have stopped there. But it did not do so. For reasons presumably satisfactory to itself, it decided to single out cities, towns, dock commissions, and ports for special treatment and consideration. Obviously, the legislature had the power so to do. To those public and quasi-public corporations, it extended freedom from taxation under conditions then existing for two fiscal years. At the end of those two fiscal years, such properties would stand on the same footing as other publicly-owned properties and would be subject to taxation under the conditions set forth in the first portion of § 1, supra. To accomplish its purpose, the legislature

wrote a proviso immediately following the quoted portion of § 1, supra, using plain and unambiguous words in so doing. That proviso is:

"* * * provided, however, that real property owned by any city or town, or any dock commission or port, *and held under a lease heretofore executed, or rented under an agreement heretofore executed,* by any person, corporation or association, whose real property, if any, is taxable, shall not become subject to assessment and taxation for the fiscal year 1947-1948, and for the fiscal year 1948-1949; * * *." (Italics supplied.)

Emphasis is placed upon the words "and held under a lease heretofore executed, or rented under an agreement hertofore executed." No argument would seem necessary to establish the proposition that there is a vast difference between the meaning of the phrase "held under lease or rented", as used in the forepart of § 1, and the phrase "held under a lease *heretofore executed*", as used in the proviso. The first phrase is absolute and unqualified; the second is conditional and definitely qualified.

The actual exemption from taxation of city-owned property "held under a lease heretofore executed", etc., for the fiscal years referred to, is to be found in subd. 3 of § 2 of the Act, but the words therein contained are but a repetition of the language used in the proviso, supra, and in conformance therewith.

The property in question in this case was under lease to Pope & Talbot, Inc., continuously from some time prior to January 1, 1947, until the new lease was executed on October 14, 1947. Therefore, at the time the Act of 1947 went into effect, the property was "held under a lease" theretofore executed.

It is a general rule of law, applicable to all statutes, that, where no other time is stated in the statute, the

legislature is deemed to be making use of its words as of the day the act becomes effective. This general rule is not peculiar to the statute involved in this case. It is a general rule such as the rule applied to all legislation that the legislature intends what it says in plain and unambiguous language. In applying the rule to the statute under consideration, we are neither adding thereto nor subtracting therefrom. *State v. Bockelman* (Mo), 240 SW 209, 212.

The word "heretofore", as used in the exemption provision, has a very definite meaning. It refers to something in the past; something that has happened at some time before; it means a preceding time or state. In using the word, it is clear that the legislature had in mind a prior event; it was speaking of something already in existence.

The exemption is clearly expressed and understandable. From taxation for the fiscal years of 1947-1948 and 1948-1949 is specifically exempted all property owned by a city "and held under a lease heretofore executed, or rented under an agreement heretofore executed"; that is to say, all property held under an executed lease or agreement in existence prior to and at the time the legislature spoke—the time the act became effective. In the precise words of the legislature, all such property so held under lease or agreement at that time *"shall not become subject to assessment and taxation"* for the two fiscal years in question. Could anyone misunderstand those plain words? The words "shall not become" contemplate the future. What *shall not become* subject to assessment and taxation? As the late Justice BELT was wont to say, the question answers itself. It would seem to be unnecessary to elucidate the obvious.

The word "held", to which the court attaches so

much importance at a sacrifice of the meaning of other plain words involved, when considered in connection with the words *"shall not become* subject to assessment and taxation" (those being the potent words of the exemption), clearly speaks as of the day the Act became effective. "Held" is the past, not the future, tense of the verb "hold". As used in the exemption provision, it can be considered as applying to a future state *only by first amending the statute,* as the court has done, in adding thereto the words "at the time the tax is levied." This is an example of putting the cart before the horse.

The property in question having been under lease at the time the Act became effective, it was not subject to assessment and taxation for the two fiscal years mentioned. This exemption became definitely fixed on July 5, 1947. No subsequent change in the status of the property, short of a change in ownership, could bring to life its taxability. It is immaterial to our discussion that other statutes provide for taxation of properties upon a change in ownership; for example, § 110-829, OCLA, as amended by ch 357, Oregon Laws 1945. The Act with which we are concerned is complete in itself, and its provisions are not dependent upon any other statute. If we were concerned with a matter of ambiguity and were endeavoring to arrive at the legislative intent by rules of construction, reference to similar acts might be helpful. But that situation is not present here.

To uphold the contention of defendants in this proceeding, and in order to place judicial approval upon the tax sought to be imposed, it has been necessary for the court not only to import into this exemption provision the words "at the time the tax is levied" so as to make the phrase read "held, *at the time the tax*

*is levied,* under a lease heretofore executed", but also to ignore, in effect, the specific words *"shall not become* subject to assessment and taxation", together with their obvious meaning as applied to the subject matter of the exemption.

In effect, the court has rewritten the proviso (and exemption) to read as follows:

"* * * provided, however, that real property owned by any city or town, or any dock commission or port, and held, *at the time the tax is levied,* under a lease *executed prior to July 5, 1947,* or rented, *at the time the tax is levied,* under an agreement *executed prior to July 5, 1947,* by any person, corporation or association, whose real property, if any, is taxable, shall not *be* subject to assessment and taxation for the fiscal year 1947-1948, and for the fiscal year 1948-1949; * * *."

Section 2-216, OCLA, in part provides:

"In the construction of a statute * * *, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, *not to insert what has been omitted, or to omit what has been inserted* * * *." (Italics supplied.)

The court in its opinion invites attention to, and relies upon, § 2-217, OCLA, which in part provides:

"In the construction of a statute the intention of the legislature * * * is to be pursued, if possible * * *."

This is but a legislative declaration of a universal rule of statutory construction, the primary and most important rule. But the rule is applicable only when the court is required to resort to rules of statutory construction because of ambiguous language used in the statute.

To construe this statute according to its plain words

leads to no absurdity and does not render it unconstitutional. *Fox v. Galloway,* supra. The legislature had the power to provide any exemption it saw fit. It could have exempted city-owned property from taxation under any and all circumstances. It is immaterial what considerations may have induced it to absolutely exempt from the taxing provisions of the statute for two fiscal years all property held under a lease at the time the act became effective, instead of all such property so held at the time the tax is levied. That was exclusively a legislative matter. Had it desired to exempt from taxation only property held *at the time the tax is levied,* under a lease executed prior to July 5, 1947, as it did in the amendatory Act of 1949 (subd. 4 of § 2, ch 395, Oregon Laws 1949), it could, and no doubt would, have so expressed itself. This court may be able to write a better bill in the interests of the tax collector than that written by the legislative assembly, but it seems to me it ought to be content with leaving the matter of tax impositions to the legislature, rather than usurping the legislative prerogative in amending the law by adding words thereto. Legislative bodies impose enough taxes without the courts, through indulging in judicial interpretation, increasing the tax burden of the taxpayer.

Because of the fact that final adjournment of the legislature in 1947 was somewhat delayed, so that this statute did not go into effect under the law until July 5, 1947, mention of the fiscal year of 1947-1948 became meaningless, because the levy for that fiscal year was made as of July 1, 1947, or at a time when the statute was not in effect. But the history of this legislation indicates quite plainly that the legislature figured the fiscal year of 1947-1948 would be involved. The bill for this Act (House Bill 351) was introduced in the

legislature and read the first time on February 12, 1947; it passed the House on February 20; it passed the Senate, with amendments, on March 28; on March 28 the House concurred in the Senate amendments and repassed the bill. It was signed by both the president of the Senate and the speaker of the House on March 31, 1947.

It is my opinion that the amendatory Act of 1949, above mentioned, quite clearly indicates that the legislature had placed the same interpretation upon the words contained in the Act of 1947 as is placed thereon in this dissenting opinion. It no doubt felt that the exemption granted in the 1947 Act should be extended beyond the two fiscal years mentioned under certain conditions and specific limitations. By subd. 4 of § 2, ch 395, Oregon Laws 1949, after having listed different properties that should be exempt from taxation, the legislature provided that there should also be exempt the following:

"4. Real property owned by any municipality, or any dock commission or port organized under the laws of this state, to the extent to which such property is either (a) * *, (b) held 'under a lease or rental agreement executed for any purpose prior to July 5, 1947, *provided that this exemption shall continue only during the term of such lease or rental agreement in effect on said date,* or (c) * *." (Italics supplied.)

The above emphasized proviso makes this exemption conform to the policy established under the provisions of other statutes of this state. A change in the status of the property as to the lease would terminate the exemption, but the exemption would continue throughout the term of the original lease, whether that term was for two years, five years, ten years, or longer. This is a substantial change in the

original program as provided in the Act of 1947. But it is manifest that this provision was incorporated into the amendatory act because the legislature knew that it was not included either directly or indirectly within the meaning and terms of the exemption set forth in the 1947 law.

It is hornbook law that there should be placed upon a tax statute a natural and not a strained meaning. Tens of thousands of property owners, virtually the backbone of the state, pay real estate taxes. They are constantly forced to interpret tax statutes in order to determine their obligations. Sometimes the meaning to be attached to a tax statute determines whether or not a contemplated purchase of an item of real property will be profitable or otherwise. Tax statutes should be so phrased that the taxpayer can readily and with certainty ascertain their meaning. We must remember that tax statutes exact severe penalties from any property owner who fails to meet their demands. The circumstances just mentioned caution courts that tax statutes should be given their most natural and apparent meaning. If the natural meaning of the language used is rejected by the courts and something is read into the statute which subjects the property to a tax, the property owner finds himself subjected to an unanticipated liability. In fact, by the time he discovers the unanticipated liability, severe penalties may have substantially augmented the amount of the tax.

The present case is a good example of the difficulty just mentioned. Had anyone interested in this property sought the advice of an attorney concerning the contested statute, who will say that the attorney would have told his client that the property was subject to taxation? Before that question is answered, let us

take note of the fact that this case was filed in the circuit court on July 26, 1949, and has, therefore, been in the courts for more than three years. The circuit court's decree was entered February 21, 1951. The appeal was argued in this court on September 9, 1952, and the issues have received extensive attention by the court. The decision which holds that the statute subjects the property to taxation is rendered by a divided court. Thus, anyone who contemplated a transaction concerning the property mentioned in the statute was faced with hazards. I do not believe that the legislature intended that such a hazardous interpretation should be placed upon its enactment. It more likely intended that the most natural and apparent meaning should be attributed to the statute which it wrote. Hidden meanings which can be discovered only after extensive probing in the quietude of judicial chambers should not be given to any tax statute.

The court, in referring to some of plaintiffs' contentions in this case, classifies them as absurd. In connection with one interpretation of the proviso insisted upon by plaintiffs, the court says it would render the proviso senseless and without purpose. Presumably, plaintiffs represent substantial and intelligent business interests. They are represented in this suit by intelligent and responsible counsel. To make such charges is not only unnecessary, but they are unwarranted. This court is not infallible, and it, like any other human-controlled organization, may, at times, err, and the contentions of those who disagree with it might, in truth, be perfectly logical, rather than absurd and foolish. There is a virtue in maintaining pride of opinion, but it should not be carried to the extent of closing one's eyes to the obvious.

It is my opinion that the decree of the trial court

should be reversed and this cause remanded with directions to enter a decree in favor of plaintiffs, as prayed for in their complaint.

ROSSMAN, J., concurs in this dissent.

PETITION FOR REHEARING

*Clark & Clark and C. D. Christensen,* of Portland, for the petition.

*Dan M. Dibble,* Deputy District Attorney for Multnomah County, and *John B. McCourt,* District Attorney for Multnomah County, of Portland, contra.

LUSK, J.

Plaintiffs have filed a petition for a rehearing based solely upon the ground that this court made a mistake on a question of elementary grammar. Apparently plaintiffs have abandoned their contention that in the phrase "real property * * * held under a lease heretofore executed * * *" the word "heretofore" modifies "held" instead of "executed". Counsel for plaintiffs, being good grammarians as well as good lawyers, would, of course, not adhere to such a position once the error was pointed out to them. They now shift their ground to the word "held", and assert that the Supreme Court of Iowa erred in holding in *Starr v. Case,* 59 Ia 491, 13 NW 645, that "participles have no reference to time", and that we erred in following the Iowa court. Counsel tell us that Welch's Analysis of the English Sentence (referred to by the Iowa court) is not available to them, "apparently having been out of print for some little time", and they bring the matter up to date by relying on Webster's New International Dictionary (2d ed) 1947 and A Grammar of

Living English by McKnight, Haber and Hatfield (1939), which is not available to us. While English usage changes from time to time, and what was frowned upon 50 years ago may be approved today, just as words of common utterance in the past may now be obsolete (for which see any dictionary), we venture to express a doubt whether there have been radical changes in the rules of elementary grammar during, say, the last century. Be that as it may, if we assume that Welch's text is of ancient vintage, if perchance it belongs to the era when counsel and the members of this court were in the primary grades and grammar was really taught, nevertheless, at least so far as perfect participles are concerned—and counsel and the court are agreed that the word "held" is a perfect participle —we find on examination no difference between Welch and Webster.

Welch, as quoted by the Iowa court, said: "Participles have no reference to time, they simply show the action, being or state of the verb from which they are derived as finished or unfinished." Webster defines a participle as "A word that partakes of the nature of both verb and adjective; a verbal adjective, modifying a noun, but sharing the adjuncts and construction of the verb from which it is derived." We believe that there is no difference among the authorities on grammar as to the correctness of this definition. Webster proceeds: "The English verb has two participles: (1) the *present,* ending in-*ing* * * * (2) the *perfect,* ending for the most part in -*ed, -d, -t, -en,* or -*n* (I saw the note *written* and *posted*). These tense forms refer to the *state* of the action or occurrence as in progress or complete, rather than to its *time of happening,* which depends on the time expressed by the verb of the clause it occurs in (he climbed the stairs, *smiling* to himself,—

in which sentence *smiling* refers to the same time as *climbed*).'' It seems to us that Webster and Welch are saying the same thing in somewhat different language.

It is not to be assumed, however, that this is a rule of universal application, for the time of happening may be otherwise expressed than by a verb in the clause in which the participle occurs. An example is found in the phrase ''in a lease heretofore executed'', which has no verb. The time of the perfect participle ''executed'' is fixed by the adverb ''heretofore''. The phrase is elliptical, the words ''which was'' being implied before ''executed''.

So, of the perfect participle ''held'', as used in the statute. First it is provided that property of a city held under a lease by a person whose real property is taxable shall be subject to taxation. Everyone agrees (at least no one has had the hardihood to assert the contrary) that this means held under a lease in the future, and, of course, at the time a tax is levied. If this were not so the statute would have no point whatever. Next it is provided that property held under a lease *heretofore executed* shall not become subject to taxation for the fiscal years 1947-1948, 1948-1949. Now, this also means held under a lease in the future, to wit, the two fiscal years specified during which the exemption is to continue. In each provision we find the elliptical phrase ''held under a lease'', with nothing to indicate the time of *held* (unless it be the verb *shall* in the phrase ''shall not become subject to assessment'', etc.) other than the context of the act, its sense and meaning, and the object in view. The sole difference between the two provisions lies in the fact that a particular class of lease—that is, one heretofore executed— is the subject of the later provision.

Quoting further from Webster, counsel say that the perfect tense is "that designating or pertaining to a form or forms of verb or *verbal expressing the action or state as completed at a time denoted as either the time of speaking or a time spoken of.*" Counsel construe the foregoing to mean that the perfect participle *held* "retains the tense attributes of the verb", and conclude that it "refers to *'the action or state as completed at * * * the time of speaking'*, i.e., at the moment the act became effective" (meaning by "act", we assume, the statute under construction). We think counsel have misunderstood Webster's meaning. The author here was speaking both of verbs and *verbals*. A participle is a verbal. A verb in the perfect tense does express the action or state as completed at the time of speaking, as, for example, in "he held the land under a lease". A verbal does not, as Webster plainly says in writing about the perfect participle.

Let us give our attention now to the opening phrase of the clause of the statute under consideration, "provided, however, that real property owned by any city or town", etc. "Owned" is a perfect participle. According to counsel's view, as just outlined, it must refer to, "the action or state as completed * * * at the time of speaking, i.e., at the moment the act became effective." This compels the conclusion that the legislature intended to provide that thereafter real property held under a lease by a person whose property is taxable should be taxed if it was owned by a city on July 5, 1947, and regardless of its ownership at the time of levy of the tax. We know that learned counsel for the plaintiffs would not vouch for an absurdity of that sort; but we are not aware of any justification for distinguishing between past participles when it comes to applying a rule of grammar. There is, however, no

such difficulty, for there is no such rule as counsel contend for.

In the concluding part of their brief in support of the petition, counsel for plaintiffs give their interpretation of the exemption granted in ch 382, Oregon Laws 1947, saying that it "is extended *to property which was held at the time of the effective date of the act under the terms of a lease entered into prior to the effective date of the act.*"

This appears to be a tacit concession, despite assertions heretofore made to the contrary, that the statute is ambiguous and requires construction. For ourselves, after re-examination of the matter in the light of this discussion of the nature of a perfect participle, while we still think the statute is ambiguous, yet it is only slightly so. There is in it what we might term an unambiguous ambiguity, which vanishes entirely when we give our attention to the rules of grammar properly understood and to the legislative purpose, namely, to subject to taxation publicly owned property when held in private hands under lease and to relieve such property from taxation during the two fiscal years following passage of the act if such a lease was entered into prior to the time the act took effect. The reason for the exception respecting pre-existing leases is stated in our former opinion, has not been questioned, and need not be repeated.

The petition for rehearing is denied.

ROSSMAN, J.

I agree that the petition for a rehearing should be denied. Further argument would serve no useful purpose. I adhere, however, to the views expressed in the dissenting opinion which was delivered at the time of the original disposition of this cause.

TOOZE, J., concurs in this opinion.