Argued and submitted May 1, reversed November 27, 1984, rehearing denied
January 8, 1985

# PORT OF COOS BAY,
*Respondent,*

*v.*

# DEPARTMENT OF REVENUE,
*Appellant.*

## (TC 1624; SC S30218)
691 P2d 100

Ted E. Barbera, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs was Dave Frohnmayer, Attorney General, Salem.

George T. Gant, Coos Bay, argued the cause for respondent. With him on the brief was Thom, Gant & Whitty, Coos Bay.

CARSON, J.

## CARSON, J.

This is an appeal from an Oregon Tax Court decision holding that the real property in question, owned by plaintiff Port of Coos Bay (the Port), is exempt from ad valorem property taxation. The Coos County assessor had placed the property on the Coos County tax rolls for the tax year 1978-79. After a hearing, defendant Department of Revenue (Department) determined that the subject property was taxable. The Port filed a complaint with the Tax Court contending that the property in question was exempt from taxation. The Tax Court held that the dry boat storage building at issue constitutes the "berthing" of watercraft and, therefore, is exempt. The Department then appealed to this court. Our review of the decision of the Tax Court is under ORS 305.445.

According to the stipulated facts, the property at issue is a dry boat storage building located at the Charleston Small Boat Basin in Coos County. It is owned and operated by the Port and located on dry land, approximately 350 feet from the water. Most of the building is divided into boat storage stalls, the majority of which are used by private (taxable) individuals under a "Use Agreement" entered into by those individuals and the Port. The county assessor assessed only the value of that part of the building and the land beneath it subject to the use agreements, not the part used by the Port. The assessor also assessed the same proportion (22/25) of the asphalt paved area, used for access to the storage units, which was deemed to be attributable to taxable use.

The relevant statutes are ORS 307.090(1),[1] 307.110(1)[2] and 307.120(1)(a). ORS 307.090(1) provides that

---

[1] ORS 307.090(1) provides:

"Except as provided by law, all property of the state and all public or corporate property used or intended for corporate purposes of the several counties, cities, towns, school districts, irrigation districts, drainage districts, ports, water districts and all other public or municipal corporations in this state, is exempt from taxation."

[2] ORS 307.110(1) provides:

"Except as provided in ORS 307.120, all real and personal property of this state or any institution or department thereof or of any county or city, town or other municipal corporation or political subdivision of this state, held under a lease or other interest or estate less than a fee simple, by any person whose real property, if any, is taxable, except employes of the state, municipality or political subdivision as an incident to such employment, shall be subject to assessment and

port property generally is exempted from taxation. ORS 307.110(1) states an exception, where a port's property is "held under a lease or other interest or estate less than a fee simple, by any person whose real property, if any, is taxable." ORS 307.120(1)(a)[3] is an exception to the exception stated in ORS 307.110(1). It exempts from taxation real and personal property owned by a port "to the extent to which such property is: (a) [l]eased, rented or preferentially assigned for the purpose of berthing of ships, barges or other watercraft."

Two issues are presented by this case. The first is whether the "Use Agreement" entered into by private (taxable) individuals and the Port was a lease, making the subject property taxable under ORS 307.110(1). The Tax Court did not expressly decide this issue, but it held that the dry boat storage units were exempt from taxation pursuant to ORS 307.120(1)(a) because they were used for the purpose of berthing watercraft. To reach this issue, the Tax Court necessarily must have determined that the dry boat storage units were "held under a lease or other interest or estate less than a fee simple" under ORS 307.110(1).

Because the "berthing exception" does not come into play unless the property in question is taxable, we shall first consider whether the property is taxable under the initial exception (ORS 307.110(1)) to the general municipal exemption from taxation (ORS 307.090(1)). The Port contends that it was the intent of the Port and those contracting for space with the Port that the "Use Agreement" conveyed merely a license to use the storage units, and not a leasehold, and that the storage units are thus tax exempt under ORS 307.090(1), the general exemption for municipal property. In support of

taxation for the true cash value thereof uniformly with real property of nonexempt ownerships."

[3] ORS 307.120(1)(a) provides:

"(1) Real property owned by any municipality and real and personal property owned by any dock commission of any city or by any port organized under the laws of this state is exempt from taxation to the extent to which such property is:

"(a) Leased, rented or preferentially assigned for the purpose of the berthing of ships, barges or other watercraft (exclusive of property leased, rented or preferentially assigned primarily for the purpose of the berthing of floating homes as defined in ORS 488.705), or the discharging, loading or handling of cargo therefrom or for storage of such cargo directly incidental to transshipment;"

its position, the Port points to the fact that the words "landlord," "tenant," "lease" and "rent" were not used. The Port also relies on three provisions in the agreement. The first provision is that the "Use Agreement" specifically prohibits commercial use "without the prior written permission of the Port's Manager." The second provision is that the agreement does not give the user exclusive control of the area in that it states: "Owner will allow the Port or his agent free access at all times to his storage unit for the purpose of inspection, fighting a fire or remedying or preventing any casualty or potential hazard." The third provision is that the agreement requires the user to specify which vessel will be stored in a given storage unit.

■■■ The three essential elements of a lease are: a description of the property, the duration of the term, and the rental consideration. *Marastoni v. Lucey,* 268 Or 433, 440, 521 P2d 521 (1974). The "Use Agreement" described the premises by stating which storage unit was to be used. It also specified the monthly use rate. In the section entitled "Term", it stated:

> "This Agreement shall become effective on the date stated below and remain in force unless terminated by written notice given by either party to the other thirty (30) days preceding either the fifteenth (15) day or the end of the month in which it is desired for termination to become effective."

This thirty-day notice provision to terminate use, when construed with the monthly use rate, is sufficient to create a monthly term. A license, unlike a lease, is generally revokable at will without notice. *Strandholm v. Barbey,* 145 Or 427, 440, 26 P2d 46 (1934). The thirty-day notice provision quoted above is inconsistent with construing the "Use Agreement" as a mere license.

■■■ The fact that the right to use the property is limited by the creating instrument to certain specified activities does not prevent the agreement from creating a leasehold interest. *Sproul et al v. Gilbert et al,* 226 Or 392, 403-04, 359 P2d 543 (1961). Neither does the lack of exclusive control prevent the agreement from creating a leasehold interest. A reservation in the lessor of the right to enter the leased premises for inspection purposes is common. *Sproul et al v. Gilbert et al, supra,* 226 Or at 408. Where, as here, the right to enter does not materially interfere with the user's right to use the storage

unit, we do not consider it significant.

No particular words are necessary to create a lease. If the agreement grants sufficient control over the premises to fulfill the requirement of possession, a leasehold is created. The restrictions cited by the Port are not sufficient, separately or in combination, to reduce the user's interest in the storage units to a non-possessory license.

The Port further contends that the "Use Agreement" conveyed a license rather than a possessory interest in the boat storage units because the use is identical to state park campsite use, citing an opinion of the Attorney General stating that state park campsite users have licenses, not possessory interests, in state park facilities. 35 Op Att'y Gen 704 (Or 1971). In that opinion, the Attorney General concluded that providing campsites is a governmental rather than a proprietary function, as part of the overall operation of state parks. Plaintiff argues that the dry boat storage building at issue is only a part of the overall services of the Port in operating the Charleston Small Boat Basin.

Without deciding whether campsite users have a mere license to use state park facilities, we conclude that the possessory use granted by the "Use Agreement" at issue here is greater than that granted a state park camper. The camper does not occupy a campsite for a fixed term and is not subject to a thirty-day notice provision to terminate use. The camper's occupancy is limited by regulation to ten days in any fourteen-day period in the summer months and to fourteen days in any eighteen-day period in the winter months. OAR 736-10-050. A camper does not occupy a campsite under a bilateral agreement, but is subject to regulations unilaterally imposed by the authority of ORS 390.160.

For the reasons discussed above, we agree with the Tax Court's implicit conclusion that the dry boat storage units at issue were leased to taxable individuals within the meaning of ORS 307.110(1), and thus subject to ad valorem taxation, unless otherwise exempted.

We now turn to the question whether the dry boat storage units were "[l]eased, rented or preferentially assigned for the purpose of the berthing of * * * watercraft," and thus exempt from taxation under ORS 307.120(1)(a). The Tax

Court determined that a tax exemption for municipally owned property should be liberally, not strictly, construed, relying on *City of Eugene v. Keeney,* 134 Or 393, 293 P 924 (1930). The Tax Court eschewed a dictionary definition of "berthing" in favor of a broad one when it held that the dry boat storage building at issue was leased for the purpose of "berthing" of watercraft.

On several occasions, in the context of ORS 307.110 or its predecessor statutes, we have been urged to adopt the view that tax exemptions for property owned by municipal corporations should be liberally construed, and exceptions thereto strictly construed. In *Holman Transfer Co. et al v. Portland et al,* 196 Or 551, 249 P2d 175, 250 P2d 929 (1952), we said that rules of strict or liberal statutory construction are "mere aids to construction and come qualified with the rule 'that that sense of the words is to be adopted which best harmonizes with the context, and promotes in the fullest manner the policy and object of the Legislature.' " 196 Or at 564 (Citation omitted.) In *Holman* we concluded that the purpose behind the predecessor statute to ORS 307.110(1) was that even publicly owned property should pay its share of the cost of government when in the hands of a private person and devoted to a private use. 196 Or at 557.

While it is clear that ORS 307.110(1) states the legislative purpose to tax municipally owned property leased to private individuals for their private use, the legislature has expressly exempted port property which is leased to taxable individuals for the purpose of "berthing * * * of watercraft." ORS 307.120(1)(a). This exemption was enacted in 1949. Or Laws 1949, ch 395, § 2. Unfortunately, no legislative committee reports or floor debates discussing this enactment have survived. The absence of legislative history makes our task of statutory interpretation more difficult.

The state urges us to adopt a narrowing interpretation of this exemption, limiting it to commercial ships, barges and other watercraft moored at a dock or wharf. Whether the legislature intended this exemption to be limited to commercial watercraft is not necessary to our decision in this case, and we decline to decide it. In making this argument, the state relies, in part, on amendments to ORS 307.120, enacted in

1977, 1979 and 1981. We do not find these amendments particularly persuasive on this issue.

As in *Holman Transfer Co. et al v. Portland et al, supra,* and *Johnson v. Dept. of Revenue,* 292 Or 373, 377, 639 P2d 128 (1982), we again deem it unnecessary to refer to a liberal or a strict rule of statutory construction. Instead we look to the language of the statute to discern the legislature's intent. As an aid to understanding what the legislature intended by the word "berthing," we turn to the dictionary definition.

"Berth" is defined as:

"[naut.] 1c. The place where a ship lies when at anchor, or at a wharf." Webster's New International Dictionary 257 (2d ed unabridged 1950).

"Wharf" is defined as:

"1a.   A structure of timber, masonry, cement, earth, or other material, built on the shore of a harbor, river, canal, or the like, esp. one extending parallel to the shore line, so that vessels may lie close alongside to receive and discharge cargo, passengers, etc.

"b.   Any structure or surface, as a pier or dock, alongside which a vessel may lie." Webster's, *supra,* at 2907.

■■■ ■■■  The dictionary definition of "berthing" in the context of ORS 307.120(1)(a) can be summarized as watercraft moored at a wharf or lying at anchor. The dry storage of boats in a building more than 300 feet from the water is not the "berthing" of watercraft contemplated by the legislature in ORS 307.120(1)(a).[4] We conclude that the legislature did not intend to exempt from taxation the dry boat storage building and asphalt paved area at issue.[5]

---

[4] The state argues that because boat gear and equipment were also stored by taxable individuals in these dry storage units, this use exceeds what the legislature intended to exempt from taxation under ORS 307.120(1)(a). The "Use Agreement" provides for the storage of a particular vessel and we deem the storage of boat gear and equipment to be incidental.

[5] In the conclusion of its respondent's brief, the Port requests this court to hold that the Port is an "individual taxpayer" within the meaning of ORS 305.447, which provides:

"If, in an appeal under ORS 305.445 involving taxes upon or measured by net income in which an individual taxpayer is a party or involving gift taxes, the court

Two additional contentions of the Port remain. In its brief to the Tax Court, the Port makes reference to an alleged error in the assessment figures used to compute the taxable value of the 53,000 square feet of asphalt paving that provides access to the storage building in question. Apparently, the tax assessor used the same proportional factor for the asphalt paved area as used in allocating the taxable value of the building (22/25 of value).

At oral argument to this court, the Port stated that the assessor's valuation was not accurate because all the storage units available for use by individuals were not actually in use during the tax year in question. As noted earlier, the parties filed a written stipulation in the Tax Court, which, in part, declared the average occupancy rate to be 82.5 percent. The Port seems to contend that the average occupancy rate should have been factored into the assessor's valuation.

Those two potential errors in assessment were not mentioned in the Port's complaint to the Tax Court. Consequently, we decline to remand for consideration of these two issues.

The decision of the Tax Court is reversed. The decision of the Department is reinstated.

---

* * * denies the additional assessment of taxes claimed * * * the court may allow the taxpayer:

"(1)  Reasonable attorney fees * * *;

"(2)  Reasonable expenses * * *."

We need not reach this question, because this appeal concerns ad valorem property taxes, not income or gift taxes. ORS 305.447 is thus inapplicable.