# C. K. BENTON, JR. AND FRANCES Y. BENTON
## *v.*
## DEPARTMENT OF REVENUE

# CASCADE ORCHARDS, INC.
## *v.*
## DEPARTMENT OF REVENUE

Wayne C. Annala, Annala, Lockwood, Carey & Hull, Hood River, represented plaintiffs.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs on first issue; for defendant on second issue, rendered July 27, 1977.

CARLISLE B. ROBERTS, Judge.

The plaintiffs, all orchardists in Hood River County, Oregon, appealed from defendant's Order No. VL 76-66, dated February 13, 1976, relating to the real property tax assessment date of January 1, 1974. Two issues were presented to the court: first, whether certain land, lying under buildings provided by orchardists in Hood River County for use by itinerant workers employed preparatory to and during harvest seasons, is eligible for special assessment at farm use value for property tax purposes; and second, whether the assessed value of farm use land in the county and for the subject property was properly determined for the tax year 1974-1975. (The first issue did not relate to Tax Court No. 1036; the second issue was raised in each case.) The three cases were consolidated for trial and it was stipulated that the evidence presented would apply equally to each where pertinent.

Turning to the first issue, the plaintiffs proved that a common practice among orchardists in Hood River County is to provide some form of housing for permanent and itinerant agricultural employees. Some

employers and some employees reside on a farm throughout the year. According to the undisputed testimony of one of the plaintiffs, minimum numbers of workers are retained during the winter and early spring months to prune the fruit trees. Cultivating, spraying and the planting of new trees begin in April or May, and, by mid-June, the crews are increased for the process of thinning the immature fruit. The three-week cherry harvest requires a large number of workers and is the peak summer employment period. Bartlett pears are harvested in mid-August, followed by the harvest of the winter pear crop. During this period, the work force gradually decreases until the apple harvest is completed in mid-October. In order to attract crews, the orchardists must provide sufficient temporary housing for migrant workers' use during the peak harvest times. The remainder of the year, when crews are at a minimum level, this housing stands vacant and is not rented to other occupants.

Plaintiffs asserted that the cabins and other forms of housing, built by Hood River orchardists for the use of migrant workers who come to the valley at harvest time, are provided as an accepted farming practice in the county and, consequently, the land under such cabins was eligible for special assessment on January 1, 1974, at the farm use value authorized in ORS 308.370.

A study of the pleadings and the record leads the court to the conclusion that the subject properties were "unzoned farm lands," described in ORS 308.370(2), not lands within an exclusive farm use zone, referred to in ORS 308.370(1), to which the provisions of ORS 215.203 to 215.263 particularly apply. Accordingly, we must first turn to ORS 308.345 to 308.403 for guidance. Some parts of ORS 308.370(2) and 308.380(1) must be construed. ORS 308.370 provides in part:

> "Notwithstanding ORS 308.205 or 308.235, but subject to ORS 308.232:
> "* * * * *

[ 164 ]

"(2) *Any land* which is not within a farm use zone but which is being used, * * * *exclusively for farm use as defined in subsection (2) of ORS 215.203* shall, upon compliance with ORS 308.375 [referring to written application to the county assessor], be assessed at its true cash value for farm use and not at the true cash value it would have if applied to other than farm use. * * *" (Emphasis supplied.)

ORS 308.380(1) states:

"(1) The Department of Revenue shall provide by regulation for a more detailed definition of farm use, consistent with the general definition in subsection (2) of ORS 215.203, to be used by county assessors in determining entitlement to special assessment under subsection (2) of ORS 308.370. Such regulations shall not be designed to exclude from the special assessment those lands which are in farm use as defined in subsection (2) of ORS 215.203 for which tax relief is intended."

Turning to the defendant's published rule OAR 150-308.380, in force on the pertinent assessment date, January 1, 1974, the following parts must be considered:

"1. The law seeks to give the benefits of ORS 308.370 et seq. to that farm land which is operated primarily for the purpose of obtaining a profit in money.

"2. The assessor must consider all the requirements of ORS 215.203 and must be convinced that not only such requirements are met but, in addition, the land must be used in a manner that is reasonably designed and intended to give rise to a profit in money by accepted farming practices. Land so used is farm-use land. Since intent must be ascertained from overt acts, the assessor should consider many elements in reaching a conclusion as to whether the use of a particular parcel of land qualifies as farm-use land. * * *"

The provisions of ORS 308.380 and OAR 150-308.380 require consideration of ORS 215.203 (as amended by Or Laws 1973, ch 503). This section provides in pertinent part:

"(2)(a) As used in this section, 'farm use' means the current employment of land *including that portion of such lands under buildings supporting accepted farming*

*practices* for the purpose of obtaining a profit in money by raising, harvesting and selling crops or by * * * any other agricultural or horticultural use or animal husbandry or any combination thereof. 'Farm use' includes the preparation and storage of the products raised on such land for man's use and animal use and disposal by marketing or otherwise. *It does not include the use of land subject to * * * the construction and use of dwellings customarily provided in conjunction with the farm use.*

"* * * * *

"(c) As used in this subsection, 'accepted farming practice' means a mode of operation that is *common to farms of a similar nature, necessary for the operation of such farms to obtain a profit in money, and customarily utilized in conjunction with farm use.*" (Emphasis supplied.)

It is immediately apparent that farm buildings, no matter how significant in the farm operation, are not given the tax advantages of "farm use" but that the land under such buildings is given the tax benefit except as to that land subject to "the construction and use of dwellings customarily provided in conjunction with the farm use." The statutory interpretation of "dwellings" in this context and other statutes *in pari materia* will be determinative of the question being considered.

Using the testimony of the Assistant Planning Director for Hood River County, plaintiffs demonstrated that all of the subject property was zoned A-1, under an agricultural (but not a farm use) zoning ordinance which requires a five-acre minimum lot size in a subdivision of property for home construction. This zoning ordinance has been in effect since 1966. The witness stated that, in order to subdivide any of the subject property, the minimum lot-size requirement would have to be observed unless a variance was granted by the County Planning Commission. He also stated that the current county planning commission policy is to treat the construction of pickers' cabins as "accepted farming practices." No five-acre minimum

lot size has been required for this type of housing. (The question of subdividing farmland for sale or lease to strangers is not present in these cases. The occupants of plaintiffs' housing are merely licensees.)

The land under some of the tenant housing located in the orchards owned by the plaintiffs in two of these cases (*Benton v. Dept. of Rev.,* No. 1035, and *Cascade Orchards, Inc. v. Dept. of Rev.,* No. 1037) has not been assessed at farm use value by the Hood River County Department of Records and Assessment. Rather, it has been assessed at 100 percent of market value as homesite property, with values ranging from $1,000 to $3,500 for .25-acre to 1-acre parcels, respectively. These assessments were made despite the fact that the zoning ordinance in effect on the assessment date would have prevented the sale or lease of homesites of these sizes by the plaintiffs. But the court notes that the Hood River County Department of Records and Assessment has not valued the land under all tenant housing at 100 percent of market value. No homesite values were assigned to the land underneath one-room cabins and certain other buildings used for tenant housing. Site values were assigned only to land under present and former "principal dwellings" (former homes of proprietors of farmsteads which have been acquired by larger orchardists upon purchase of smaller farms) and to the land under mobile homes or trailers.

The separation of tenant housing into two classes, one considered to be "dwellings" (the land thereunder being subject to assessment at 100 percent of true cash value), and the other designated as "cabins" (for which farm use land value was assessed), was made by an appraiser employed by the county's Department of Records and Assessment. He testified that, in his opinion, a "dwelling" was a building in which orchard help was housed on a year-round basis and one which he personally considered livable, citing the example of a former proprietor's farm home, now a part of a larger holding and used by a regular employee with a family.

"Cabins" were characterized by him as buildings where pickers were housed temporarily during peak seasons. This appraiser did not consider these buildings to be "dwellings" because "he wouldn't put a family in one." He described the structures as cabins which had no plumbing and which had no divisions into separate rooms.

The site values assigned to the land under the "dwellings" were established, according to the county's appraiser, by the use of comparable bare land or other homesite sales, with adjustments for homesite improvements. Site values were assigned to eight parcels owned by the plaintiff C. K. Benton, Jr. (Tax Court No. 1035), and three parcels belonging to the plaintiff Cascade Orchards, Inc. (Tax Court No. 1037). There were no homesite values in dispute in the case of the plaintiff Donald A. Clark (Tax Court No. 1036). Exhibits introduced by all parties illustrated clearly that the subject tenant housing was located in the orchards.

Plaintiffs argue that the tenant houses qualify as "buildings supporting accepted farming practices" (ORS 215.203(2)(a)) and that they are not contemplated by the statutory language of "dwellings cutomarily provided in conjunction with" farm use. Defendant argues that these buildings should be characterized as "dwellings," and that the land upon which they are situated should be disqualified from special assessment at farm use value.

■ The legislative purpose in establishing a special assessment for land in exclusive farm use, as stated in Or Laws 1973, ch 503, § 1 (codified as ORS 215.243), and ORS 308.345 to 308.360, was to encourage the preservation of *land* for agricultural uses in the State of Oregon.[1] The statement that farm use "does not include the use of land subject to * * * the construction and use of dwellings customarily pro-

---

[1] *See* 4 Willamette LJ 431 (Fall 1967) and 9 Willamette LJ 1 (March 1973).

vided in conjunction with the farm use," found in ORS 215.203(2)(a), has been interpreted by the defendant to apply to all housing present on the subject properties. However, this interpretation does not adequately consider the language which was added to ORS 215.203(2)(a) by the 1973 amendment. At that time, "farm use" was redefined to include "that portion of such lands under *buildings supporting accepted farming practices * * *.*" (Emphasis supplied.) "Accepted farming practice" was then defined in subsection (c) of that section to mean "a mode of operation that is common to farms of a similar nature, necessary for the operation of such farms to obtain a profit in money, and customarily utilized in conjunction with farm use."

 It appears to the court that the question to be decided is not where to draw the line between "cabins" and "dwellings"[2] but rather to ascertain whether or not any of the housing provided by the plaintiffs constitute "buildings supporting accepted farming practices" which are "customarily utilized" in conjunction with their orchard operations. If that is the case, then the fact that such housing may or may not be characterized as "dwellings" is irrelevant. Unquestionably, the statute is ambiguous and the intent of the legislature must be determined through an examination of the entire statutory scheme. *Holman Tfr. Co. et al. v. Portland et al.,* 196 Or 551, 249 P2d 175, 250 P2d 929 (1952).

The undisputed testimony of several witnesses clearly demonstrated that the practice of housing temporary help was not only common in the county but was vital to the successful operation of the orchards. It was necessary "for the purpose of obtaining a profit in money" (ORS 215.203(2)(a)). The types of housing

---

[2] "Dwelling" is not a word of art; it is fraught with ambiguity, frequently requiring construction. *See* 13A West, Words and Phrases, *Dwelling; Dwelling House* 561 (1965), having in mind the distinction between "cabins" and "dwellings" made by the county's appraiser. The shaded meanings of the word must be derived from the context in which it is used.

[ 169 ]

provided include one-room cabins, mobile homes, and, in the case of some of the larger orchard operations, houses (formerly the principal dwellings of smaller, independently owned orchards, which had been purchased and incorporated into the larger ranches). Testimony from several witnesses indicated that almost all orchardists in the Hood River Valley provide such housing for itinerant workers, and that it is necessary in order to have continuity of help and control over the workers to have them housed on the property where they are working.[3] The use of the land under these buildings is directly related to and necessary for proper economic operation of the orchards in Hood River County, and the unrebutted evidence submitted was overwhelming in support of the conclusion that it is customary and common to farms of a similar nature in the county.

■■■ Under the provisions of ORS 215.213, the buildings provided in conjunction with farm use, including those buildings which support accepted farming practices, are not eligible for farm use assessment. It is the land alone which receives this special treatment. It is the opinion of this court that the intent of the legislature, in the enactment of ORS 215.213, was to include in the special assessment for farm use purposes the land upon which these buildings rest. The land which is to be excluded from special assessment for farm use is that land supporting the principal dwelling of the landowner or any other dwelling which is not necessary to or utilized in conjunction with the agricultural operation for which the land is used. Any buildings provided by the plaintiffs in these suits which are used for the housing of itinerant farm workers, and which are located of necessity on the land where the workers are employed, are buildings which support accepted farming practices and therefore the land underneath them is eligible for special assess-

---

[3]The argument here goes a step beyond *Reter v. Commission,* 3 OTR 477 (1969), *aff'd,* 256 Or 294, 473 P2d 129 (1970), but the reasoning in that decision is applicable.

ment at farm use value.[4] (The court recognizes that only the property utilized by itinerant farm workers has been pleaded and is at issue in these cases, but logic compels the same tax treatment for full-time employees housed on the farm for the convenience of the employer. Testimony of one such instance was placed in the record without objection.)

---

[The court, in the interest of economy, determined that its opinion as to the second issue, relating to a substitute for the county's method of establishing farm use values, should not be published, inasmuch as it was not sufficiently useful or informative.—Rep.]

---

That portion of defendant's Order No. VL 76-66 pertaining to the eligibility for special assessment at farm use value of plaintiffs' land supporting migrant housing shall be set aside and held for naught. The Director of the Department of Records and Assessment and the Tax Collector of Hood River County, Oregon, shall amend the assessment and tax rolls for the tax year 1974-1975 in accordance with this decision. If taxes have been paid by the plaintiffs in excess of those required by the tax roll as amended, the excess, with statutory interest thereon, shall be refunded to the plaintiffs by the Board of County Commissioners of Hood River County, Oregon, pursuant to ORS 311.806 and ORS 311.812.

Plaintiffs shall prepare a decree pursuant to the court's Rule 27 and in accordance with the court's decisions herein. Each party shall bear its own costs.

---

[4] Or Laws 1973, ch 382 (codified as ORS 307.480 to 307.510), provides for tax exemption of certain farm labor camps. The court has speculated whether this act could be deemed useful as showing legislative intent applicable to the present question, but has concluded it is not clearly *in pari materia*. Counsel did not advert to it.