CARLISLE B. ROBERTS, Judge.
 

 The plaintiffs appealed from defendant’s Order No. VL 79-147 which affirmed Marion County’s assessed value of real property (Assessor’s Account No. 48347-GOO) for the tax year 1978-1979. The subject property is a one-half acre homesite located on 111.62 acres zoned for exclusive farm use (EFU). The parties agreed that the farm use property had a true cash value of $2,000 per acre.
 

 The parties stipulated that the sole issue to be decided in this suit was the "true cash or market value of the one-half acre homesite.” (Stipulation filed November 5, 1979.) The plaintiffs’ basic argument was that a homesite located on a farm in an exclusive farm zone could have no higher value than the farmland surrounding the homesite, because the homesite could not be sold separately in the market. It followed, in their view, that the homesite (which was improved with a well and septic tank) should be valued at $1,000.
 

 Additionally, the plaintiffs contended that a buyer of the total acres would not pay any additional sum over typical farm acre values for a homesite because ORS 215.213(1), listing nonfarm uses which "may be established in any area zoned for exclusive farm use,” provides for:
 

 "(e) The dwellings and other buildings customarily provided in conjunction with farm use, referred to in paragraph (a) of subsection (2) of ORS 215.203.”
 

 (This overlooks the impact of ORS 215.203(2)(a) which excepts from "farm use” the land used for "the construction and use of
 
 dwellings
 
 customarily provided
 
 in conjunction
 
 with the farm use.” An ambiguity is thus found in the statutes.) (Emphasis supplied.) The mythical buyer can establish a homesite anywhere he
 
 *[363]
 
 chooses on the acreage. However, the plaintiffs appeared to overlook the fact that wherever the new owner might choose to establish a homesite on the farm use property, that homesite would immediately be subject to a different valuation from the surrounding farmland.
 
 *
 

 This court has pointed out that the purpose of the special farm use assessment classification was to give tax relief to owners of property who were using their property for farm purposes and to retard diversion of agricultural land to other uses.
 
 Ritch v. Dept. of Rev.,
 
 4 OTR 206 (1970).
 

 The legislature defined "farm use” in ORS 215.203(2)(a) by stating:
 

 "* * * 'farm use’ means the current employment of land including that portion of such lands under buildings supporting accepted farming practices for the purpose of obtaining a profit in money * *
 

 This statute was interpreted as including the land under buildings which housed itinerant fruit pickers. In
 
 Benton v. Dept. of Rev.,
 
 7 OTR 162 (1977), the court held that, under the testimony submitted, these buildings in Hood River Valley supported "accepted farming practices.” Therefore, the supporting land was eligible for the special farm use assessment. However, this did not extend to the land supporting the landowner’s home. In
 
 Benton, supra,
 
 170, the court stated:
 

 "* * * The land which is to be excluded from special assessment for farm use is that land supporting the principal dwelling of the landowner or any other dwelling which is not necessary to or utilized in conjunction with the agricultural operation for which the land is used. * * *”
 

 
 *[364]
 
 Therefore, the court holds that the one-half acre subject property must be valued as residential land, not as farmland.
 

 The remaining issue before the court is the determination of value of the homesite on January 1, 1978. ORS 308.205 requires that property be valued at its true cash value on the assessment date. The three generally accepted methods for determining true cash value for ad valorem tax purposes are the market approach (comparable sales), the income approach and the cost approach.
 
 Pacific Power & Light Co. v. Dept. of Rev.,
 
 7 OTR 203, 215-217 (1977).
 

 Mr. Edward Lukinbeal, a real estate broker appearing as the plaintiffs’ witness, testified that it was not "customary” among brokers in Marion County to separate a homesite from farmland for valuation purposes. He testified that generally there is a differentiation in value between types of soil but not between a homesite and the rest of a farm. Mr. Lukinbeal is experienced in the real estate field, is familiar with the subject property and the surrounding area and was accepted as an expert witness, but even an expert’s opinion must be accompanied by supporting evidence and detail in order to persuade the court.
 
 Domogalla et al v. Dept. of Rev.,
 
 7 OTR 340 (1978). The plaintiffs’ witness’s conclusion offered little support for his opinion.
 

 Mr. George Bushnell, an employee of the Marion County Assessor’s office, testified for the defendant and presented comparable sales in a market approach to valuation of the subject property. Each sale used in a market data appraisal must be subjectively and individually evaluated to determine the weight it merits in that particular valuation.
 
 Thornton v. Dept. of Rev., 4
 
 OTR 243, 246 (1970).
 

 Mr. Bushnell offered three comparable sales of homesites with improvements. (Def Ex A.) The land sizes were from 1.5 to 1.9 acres zoned AR-5, EFU and
 
 *[365]
 
 RA. No two properties are identical and some adjustments are generally required to make properties comparable.
 
 Widmer v. Dept. of Rev.,
 
 4 OTR 361 (1971). The greater the number of adjustments required, the greater the chances of error in valuation. At some point in the process of adjustment, the properties simply become too diverse to be comparable.
 

 The subject property was established as a homesite before the promulgation of restrictions by the county’s health department and by the Department of Environmental Quality. Present health regulations require a separation of well and septic systems in such a fashion that a homesite will ordinarily take at least one acre. The subject homesite has no such separation. In addition, defendant’s comparable sales were homesites of more ample size that required no severance from farm use properties. These combined factors make comparability highly questionable.
 

 Therefore, in the instant case, the court agrees with the plaintiff who alleged in his post-trial memorandum that these improved sales were not comparable to the subject property. All three were sales of small, partitioned, residential lots and so many subjective adjustments were required in an effort to achieve true comparability that the results are suspect.
 

 The defendant’s witness also offered seven comparable unimproved land sales that are more persuasive to the court than the sales mentioned above. Of the seven comparable sales offered, four had the same EFU zoning as the subject property. Analysis of these four revealed that parcel sizes ranged from two to five acres, that two parcels were "buildable” at the time of sale and two were not and that an adjustment had been made for the time factor. The four EFU unimproved comparable sales ranged from an adjusted price of $3,250 to $7,000 per acre with an average price per acre of $5,520. (Def Ex A.)
 

 These comparable sales were for unimproved land. As stated, the subject land has long been improved
 
 *[366]
 
 with a well and a septic system. The plaintiff husband testified that the well was approximately 50 years old and the septic system nearly as old. The witness alleged that the value of the existing well and septic tank was approximately $1,000 and offered Exhibits 1, 2 and 3 to support a replacement cost approach. The court is persuaded that the plaintiffs sustained their burden of proof in establishing that the old well and septic system had a true cash value of only $1,000 on January 1, 1978.
 

 A one-half acre homesite is not automatically viewed as one-half the value of a comparable one-acre homesite. In its Opinion and Order No. VL 79-147, defendant concluded that size is not crucial in a home-site valuation. The comparable sales of improved properties offered by the defendant supported this contention. (Def Ex A.)
 

 The court is persuaded that the basic element of a homesite is the support of a home and that such a variance in size as found in this case makes little difference in value. The average price per acre of the sales of the unimproved EFU parcels mentioned above was $5,520. Therefore, the court finds that the subject property should be valued at $5,520 plus $1,000 for the well and septic system for a total true cash value of $6,520 on January 1, 1978.
 

 The County Assessor and the Tax Collector of Marion County, Oregon, shall amend the assessment and tax rolls for the tax year 1978-1979 in accordance with this opinion. If taxes have been paid by the plaintiffs in excess of those required by the tax roll, as amended, the excess, with statutory interest thereon, shall be refunded to the plaintiffs by the Board of County Commissioners of Marion County, Oregon, pursuant to ORS 311.806 and 311.812.
 

 Because of the narrowness of the issue, each of the parties shall pay their own costs.
 

 *
 

 The 1979 Legislative Assembly enacted Or Laws 1979, ch 480, 5 1, amending ORS 215.203(2)(b), classifying "(F) land under dwellings customarily provided in conjunction with the farm use in an exclusive farm use zone” as part of the farmland currently employed in farm use (applicable to assessment years beginning on and after January 1, 1980.
 
 See
 
 Or Laws 1979, ch 480, § 5.)