Argued July 8, affirmed August 20, 1976

# SWENSON, *Appellant,*

## *v.*

# DEPARTMENT OF REVENUE, *Respondent.*

553 P2d 351

*David O. Horne,* Eugene, argued the cause for appellant. On the brief was Gary K. Jensen, Eugene.

*G. F. Bartz,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Denecke, Chief Justice, and O'Connell, Tongue and Bryson, Justices.

O'CONNELL, J.

## O'CONNELL, J.

This is an appeal by plaintiff taxpayer from a decision of the Oregon Tax Court rejecting plaintiff's claim for a refund of yield taxes on forest crops for the 1973 tax year.[1]

The Tax Court correctly states the question at issue as follows: "The main question presented is whether the statutory language of ORS 321.310(2),[2] requiring the Department of Revenue to determine the unit value of forest crops by a 'method' which takes into account a variety of factors, requires a rule or regulation to be adopted by defendant pursuant to the rule-making requirements set forth in ORS chapter 183 (hereinafter referred to as the Administrative Procedures Act). The plaintiff argues that any such 'method' of determining value requires the adoption of a rule or regulation, and since no such rule exists, the yield tax imposed pursuant to ORS 321.315(1), for the 1973 tax year, based on the unit value of the forest crops, cannot be collected. The defendant's position is that no such rule need be adopted and that it acted in full compliance with the law."

The Department of Revenue has the power to make rules and regulations.[3] The Tax Court held that ORS 321.340(1) does not require the Department of Revenue to adopt rules and regulations but grants the department authority to adopt them if, in its discretion, it deems it necessary. It is conceded by defendant that if

---

[1] *Swenson v. Dept. of Rev.,* 6 OTR 234 (1975).

[2] ORS 321.310(2) provides in part as follows:

"* * * The retail market value per unit of measurement of a particular grade and species of timber upon a tract shall be determined by a *method* which makes reasonable allowance for species, quality, growing conditions, age, volume after allowance for defect and breakage, costs of removal, accessibility to point of conversion, topography, costs of conversion into logs, and any other relevant factors." (Emphasis added.)

[3] ORS 321.340(1) (1971 Replacement Part) provides: "The department shall * * * make orders, rules and regulations necessary to carry out and accomplish the purposes of ORS 321.255 to 321.355."

rules are adopted, the procedure for promulgating rules under the Oregon Administrative Procedures Act (ORS 183.310 et seq) would have to be followed.

Plaintiff contends that defendant in fact did adopt a new rule without reducing it to writing and without following the hearing procedure required by ORS 183.330 et seq. This "new rule," plaintiff argues, consisted of the adoption of a new method of valuation of timber crops for purposes of assessing the yield tax. To understand plaintiff's contention, it is necessary to explain the methods of appraisal employed by defendant.

As with other property subject to tax, the final objective of the appraisal is to find the market value. In making assessments under the ad valorem real property tax, three methods have become accepted: (1) comparable sales, (2) capitalization of income, and (3) the cost approach. Which of these is used depends upon the character of the property and the availability of data necessary to apply the respective methods. If there is adequate data of comparable sales, that method is used because it more directly and accurately reflects what a willing buyer would pay a willing seller for the property subject to tax, thus reflecting the market value. If the data on comparable sales is inadequate, the capitalization method must be used unless the property is not income producing, in which case the cost approach is employed.

A similar process is involved in the valuation of timber for yield tax purposes, but there are differences attributable to peculiarities in the market for timber and logs. Three methods are used by defendant's tax appraisers: (1) comparable sales, (2) conversion return, and (3) immediate harvest value. The first of these methods is readily understood, calling for the comparison of sales of similar types of timber at the valuation date, making allowances for differences in logging costs, distances to the market, and other facts. The other two methods are not very clearly explained,

[ 4 ]

either in the briefs or by the appraiser who testified for defendant. As we understand the testimony of Mr. Baker, the department's appraiser, the conversion return method starts with past sales in the log market and works back to the time the logs were in the form of standing timber, deducting various costs to transform the tree into logs located at the mill.[4]

The immediate harvest value method as used by the yield tax section consists of relying upon data on log prices and other sales data gathered by the Department of Revenue for the purpose of supplying assessment data for the ad valorem tax.

It appears from the testimony of the department's appraiser that until 1972 the conversion return method was the principal method employed in the valuation of timber for yield tax purposes. The department then began putting greater reliance on the comparable sales method. Mr. Baker explained why this was done:

"A    Because at one time they felt as though in—in picking up log prices the conversion return did not lead to a proper sale—the actual sale value of the timber. That it was something less than the sale value of the timber. We could not find substantial log prices to—high enough in conversion return to—to—to get to the sale value of the timber. Therefore we had to go to sales to substantiate or to back up our appraisals to come to sale value of timber, open market value of timber."

---

[4] In *Starker v. Department of Revenue,* 6 OTR 10, 12 (1975), the method is described as follows:

"As to merchantable timber, timely 'comparable sales' were available and used but since every logging show involves variable conditions, the log market conversion return was utilized by the trained appraiser as a method of valuing stumpage. Judgment must be exercised as to the reliability of available price data on logs in the pond and the costs of getting the logs to the pond; i.e., the price paid for falling, limbing, bucking, yarding, loading, scaling and hauling. These figures must then be adjusted in accordance with the appraiser's judgment to variables in the subject timber, including its size and density, the topography of the site, its accessibility, roads, and distance from market. All of these considerations involve the exercise of skilled judgment."

When asked why the conversion return method tended to yield lower valuations, Baker explained:

"A  Because it's difficult to get the—the actual value of the log in going to various mills.

"* * * * *

"Q  * * * [S]o what you're talking about when you're talking about conversion return, you're starting with a value that has already—timber that has been sold—* * * in the past?

"A  Yes.

"Q  * * * Rather than what they're paying at the present?

"A  That's true, yes.

"Q  Is that why there tends to be a lag?

"A  Tend to be a terrific lag at this particular time because the values changed drastically from, say, January 1 of '73 until March, April. May of '73, the values just skyrocketed. I mean—by 'values,' I mean log prices, stumpage rates and the like skyrocketed * * *."

However, the comparable sales approach did not constitute the sole method of assessment; the testimony was that it was "incorporated" into the department's other methods of appraisal in order to sharpen the accuracy of the appraisal by "backing up" the conversion return method. In some cases the conversion return method is employed without the use of the comparable sales method.[5] Baker testified that the appraisal methods employed by the Department of Revenue were standard methods applied by all appraisers estimating the value of timber.

---

[5] Mr. Baker testified:

"Q  After looking at these various methods of determining value, do you sometimes select one as the best indicator of value?

"A  It depends on the information that I pick up. If the sale is three or four months or five or six months apart, I don't even use the sale possibly. If I think I have good sound concrete log prices to go on and no other sale data to go on, I'll have to stay with the—with the conversion return.

"* * * * *

"Q  When after reviewing the three methods of value that you said that you used, the sales method, * * * the conversion return method or the I.H.V. indicator of value, do you sometimes select one of those as the best indicator of value.

"A  Yes, sir, I do."

It appears to us that the appraisal procedure adopted by defendant is essentially the same kind of procedure that is used in the appraisal of other property; a choice is made out of alternative methods of appraisal, depending upon the availability of data, the character of the property, and other facts. The ultimate goal in applying the process is to obtain the most accurate estimate of the market value of the property. We do not think that it is accurate to describe, as plaintiff does, the shift in emphasis in 1972 to a comparable sales approach (where data was available) as the adoption of a new method of appraisal. The comparable sales method was not newly created by defendant; it simply applied a well established and well known method more frequently in the interest of improving the accuracy of its estimate. Neither the initial decision to utilize standard appraisal techniques nor the change in practice, in our opinion, constitute the adoption of a "rule" within the meaning of the Administrative Procedures Act and therefore it was not necessary for defendant to follow the statutory requirements for promulgating rules. Defendant was merely implementing the legislative directive that timber shall be appraised for yield tax purposes on the basis of retail market value. We do not think that defendant is required to promulgate an administrative rule before it may apply standard appraisal techniques to determine retail market value.

The judgment of the Tax Court is affirmed.