Argued and submitted January 6, affirmed April 28,
petition for rehearing denied June 30, 1981

## CHAPIN et ux,
*Appellants,*

*v.*

## DEPARTMENT OF REVENUE,
*Respondent.*

### (TC 1325, SC 27099)

627 P2d 480

Cecil Quesseth, Salem, argued the cause for appellants. With him on the brief was Quesseth & Donaldson, Salem.

Alfred B. Thomas, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was James M. Brown, Attorney General, Salem.

PETERSON, J.

**PETERSON, J.**

Appeal from the Tax Court. 8 OTR 361 (1980). Taxpayers own a 111-acre farm in Marion County which is zoned Exclusive Farm Use (EFU). The farm operation is conducted by taxpayers and their son. Taxpayers' son and his family reside in a farmhouse on the property. There is no dispute as to the value of the land used for farming. The parties stipulated that the only issue before the Tax Court was "the true cash value or market value of the one-half acre homesite."

The taxpayers' principal contention, in the Tax Court and here, is that a homesite on a farm in an EFU zone must be valued as farmland. The Tax Court held that the homesite should be valued "as residential land, not as farmland," and determined the value to be $5,520, plus $1,000 for improvements (a well and septic system), for a total true cash value of $6,520 as of January 1, 1978.

The taxpayers appeal, asserting three assignments of error, which will be addressed seriatim. We review the case *de novo,* ORS 305.445.

### Under the statutes in effect on January 1, 1978, it was proper to assess a homesite on a farm in an EFU zone as residential property

The taxpayers' first assignment of error is that the Tax Court erred in holding that the homesite should be valued as residential property, "* * * that the market or 'true cash value' of the subject property should not include a higher valuation per acre for the homesite than for the remainder of the farm."

ORS chapter 308 concerns the assessment of property for taxation. ORS 308.232 requires that all real property be assessed at "100 percent of its true cash value." ORS 308.205 defines "true cash value" as "market value as of the assessment date." OAR 150-308.205(A)(1)(a) defines market value as follows:

"Market value as a basis for true cash value shall be taken to mean the highest price in terms of money which a property will bring if exposed for sale in the open market, allowing a period of time typical for the particular type of property involved and under conditions where both parties

to the transaction are under no undue compulsion to sell or buy and are able, willing and reasonably well-informed."

ORS 308.235 requires tax assessors to consider the zoning and other land use restrictions pertaining to a subject piece of property. At the time in question, ORS 308.370(1) provided:

"(1) Any land which is within a farm use zone established under ORS 215.010 to 215.190 and 215.402 to 215.422 or 227.210 to 227.300, and which is used exclusively for farm use as defined in subsection (2) of ORS 215.203, shall be assessed at its true cash value for farm use and not at the true cash value it would have if applied to other than farm use."

ORS chapter 215 deals with planning and zoning. At the time in question, ORS 215.203(2)(a) provided:

"(2)(a) As used in this section, 'farm use' means the current employment of land including that portion of such lands under buildings supporting accepted farming practices for the purpose of obtaining a profit in money * * *. It does not include the use of land [for] * * * the construction and use of dwellings customarily provided in conjunction with the farm use."

The taxpayers reason as follows: The subject property is zoned EFU. ORS 215.203(1) provides that land zoned EFU must be used exclusively for farming unless otherwise provided in ORS 215.213. Although ORS 215.213(1)(e) permits the establishment of "dwellings and other buildings customarily provided in conjunction with farm use," ORS 215.213(3) permits the establishment of single-family residential dwellings in an EFU, not provided in conjunction with farm use, only if the requirements of ORS 215.213(3)(a)-(e) are met.[1] Applicable Marion

---

[1] ORS 215.213:

"* * * * *.

"(3) Single-family residential dwellings, not provided in conjunction with farm use, may be established, subject to approval of the governing body or its designate in any area zoned for exclusive farm use upon a finding that each such proposed dwelling:

"(a) Is compatible with farm uses described in subsection (2) of ORS 215.203 and is consistent with the intent and purposes set forth in ORS 215.243; and

County ordinances prohibited taxpayers from partitioning their property. Taxpayers contend that since they could not lawfully sell the half-acre homesite it is improper to value the homesite separately; that inasmuch as defendant's appraisal was based on the taxpayers being able to partition and sell their property, the appraisal should not be followed, and the homesite should be valued as farm land.

■      Plaintiffs are only partially correct. ORS 308.370(1) then did require that land in an EFU zone which was used exclusively for farm use be assessed at its true cash value for farm use. But both ORS 215.213(1)(e) and ORS 215.203(2)(a) refer to the existence of a farm dwelling as a *nonfarm* use. ORS 215.213(1)(e) provides:

> "(1)   The following *nonfarm uses* may be established in an area zoned for exclusive farm use:
>
> "* * * * *.
>
> "(e)   The dwellings * * * customarily provided in conjunction with farm use * * *." (Emphasis added.)

Taxpayers' contentions also overlook the specific exception from the definition of "farm use" of "* * * land used exclusively [for] * * * the construction and use of dwellings customarily provided in conjunction with the farm use." ORS 215.203(2)(a). Whether the land could be partitioned, or whether a new residence could be built on the property may be relevant factors in valuing the land, but they are not determinative of the question of market value of the homesite. The assessor is enjoined to assess the subject property at its "true cash value." ORS 308.205. In assessing real property, in addition to considering the use of the land, and land use restrictions, the assessor must consider "* * * the improvements on the land * * * and also the use,

---

"(b) Does not interfere seriously with accepted farming practices, as defined in paragraph (c) of subsection (2) of ORS 215.203, on adjacent lands devoted to farm use; and

"(c) Does not materially alter the stability of the overall land use pattern of the area; and

"(d) Is situated upon generally unsuitable land for the production of farm crops and livestock, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract; and

"(e) Complies with such other conditions as the governing body or its designate considers necessary."

earning power and usefulness of such improvements, and any rights or privileges attached thereto * * *." ORS 308.235. The presence of the homesite, whether it be viewed as a part of the 111-acre tract or separately (as the parties stipulated) is properly considered as a homesite and valued as a homesite under ORS 308.205, ORS 308.370(1) and ORS 215.203(2)(a).[2] The Tax Court properly considered the market value of the land as a homesite rather than as farm land.

In this connection, we also take note of the taxpayers' third assignment of error that the Tax Court erred "* * * in holding that the highest and best use of the subject property is as residential land despite the property's Exclusive Farm Use zoning." We have been unable to locate any such finding in the court's opinion. Despite its location in an EFU zone, the current use of the property could properly be considered by the Tax Court under the law then in effect. See footnote 2, above. We find no error on this assignment.

### Evidence of Comparable Sales

■■ Taxpayers also assert that the Tax Court "erred in accepting defendant's introduction of alleged comparable sales in that defendant did not meet its burden of showing similarity of these sales to justify its appraisal of the subject property." Three methods of valuation for ad valorem real property taxation have obtained general acceptance: (1) market data (comparable sales), (2) capitalization of income, and (3) cost. Which method is used depends upon the character of the property and the availability of data necessary to apply the various method. Here, the only method used was the comparable sales approach. Its use appears to be appropriate under the circumstances and

---

[2] In 1979 the Legislative Assembly enacted Or Laws 1979, ch 480, § 1, which amended ORS 215.203(2)(a) and (b) to read:

"(2)(a) As used in this section, 'farm use' means the current employment of land for the primary purpose of obtaining a profit in money [by engaging in listed agricultural pursuits] * * *.

"(b) 'Current employment' of land for farm use includes * * * (F) land under dwellings customarily provided in conjunction with the farm use in an exclusive farm use zone * * *."

However, the above changes were made applicable to assessment years beginning on or after January 1, 1980. See Or Laws 1979, ch 480, § 5.

expressly authorized by OAR 150-308.205(A)(2). *See Medical Building Land Co. v. Dept. of Rev.,* 283 Or 69, 77-78, 582 P2d 416 (1978); *Swenson v. Dept. of Revenue,* 276 Or 1, 4, 553 P2d 351 (1976).

At trial, taxpayers made no objection to the receipt of such evidence. That procedural point aside, however, because of the unique facts of this case, and the way the parties framed the issue at trial,[3] it is unlikely that any property sales would be found in which the conditions would be identical or nearly so. The more unique the property, the more difficult it is to find sales of identical or nearly identical properties. The taxpayers would apparently require a showing of a sale of a small homesite severed from a larger EFU tract before the sale could be said to be "comparable." Because of recent changes in the zoning laws, such severances are no longer possible, and are probably rare or nonexistent. The lack of such "comparable sales" does not alter the facts. The evidence shows that the land is more valuable by reason of the fact that a house lawfully exists thereon.

■ Even though there were no sales in which a half-acre homesite had been severed from a large tract, it was not improper to consider recent sales of nearby small tracts, for a homesite did exist on the property and to the extent that the existence of the homesite added value to the property, it was proper to assess it as such. Of the other sales in evidence, the Tax Court looked to those which were most favorable to the taxpayers. From an independent review of the record, we are satisfied that the value of the tract in question is at least that found by the Tax Court.

Affirmed.

---

[3] The parties stipulated:

"The parties agree that the sole issue before the court is the true cash or market value of the 1/2 acre homesite."

The issue might as well be expressed as the value of a 111-acre EFU tract which includes a half-acre homesite.