# IN THE OREGON TAX COURT

## TAUNTON
*v.*
## DEPARTMENT OF REVENUE
(TC 1821)

Frederick J. Ronnau, Kulla and Ronnau, P.C., Lincoln City, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered October 5, 1982.

**CARLISLE B. ROBERTS, Judge.**

The plaintiff appealed from defendant's Order No. VL 82-312 (dated April 15, 1982). The order affirmed the "land only" valuation determined by the County Assessor of Lincoln County, Oregon, of Lots 2, 3 and 4, Block 4, Depoe Bay, Assessor's Account No. 09-11-08-BA, TL 1400 ($73,970),

TL 1500 ($84,330) and TL 1600 ($84,330), as of January 1, 1981. The assessed value totalled $242,630. The plaintiff seeks a reduction to $65,000 ("with each lot having a true cash value of no more than $21,667." Pl Comp, at 2).

The subject property is located between Bay Street and the bay in the city of Depoe Bay. The upper or northern portion for many years has been (and now is) chiefly used as a parking lot, with 25 parking spaces. The balance of the land is steep hillside with stairway access from one of the lots to a building on a dock over the water. There are three 10,000 gallon fuel storage tanks on the east lot and a small pump building near the east end of the parking lot.

Plaintiff's expert witness, Mr. G. W. Biddle, offered a market approach to value based upon six sales and one rental of allegedly comparable properties. The comparable sales approach to valuation is well accepted. *Chapin v. Dept. of Rev.,* 290 Or 931, 936, 627 P2d 480 (1981). However, sales are seldom completely comparable and adjustments must be considered which reflect the differences. *Widmer v. Department of Revenue,* 4 OTR 361 (1971), *aff'd* 261 Or 371, 494 P2d 854 (1972).

Mr. Biddle made adjustments for times of sale of 30 percent for comparable sale No. 1, sold September 1979, and 30 percent for comparable sale No. 4, which sold in March 1979. (Pl Ex 1, at 18.) When cross-examined concerning the use of the same percentage of adjustment for sales occurring six months apart, the witness testified that appraising is not an exact science and there must be room for judgment.

Mr. Biddle testified that the subject property is zoned M-C (marine-commercial). His sale No. 1 had an M-C zoning but sales 2 and 3 were zoned R-4 (residential) and sale No. 4 was zoned C-1 (commercial). Testimony revealed that condominiums were planned for the property designated as sale No. 4.

In order to make the offered sales comparable to the subject property, the witness applied adjustments to the four sales for time, size, neighborhood and topography. Total adjustments of 50 percent, 95 percent, 210 percent and 250 percent, respectively, were made to the comparable sales

offered by the plaintiff. No adjustment was offered for differences in zoning. Adjustments of this magnitude substantially decrease the probative value of the opinion offered.

Mr. Biddle concluded that pursuant to his market approach to value, the true cash value of the subject property on January 1, 1981, was $65,500.

Mr. Harold Taunton, father of the plaintiff, testified that he and his wife and their four sons own the subject property. The three tax lots are contiguous to and east of TL 1700, the site of the Spouting Horn Restaurant fronting Highway 101 (Depoe Bay's "main street") and owned by Mr. and Mrs. Harold Taunton. The ticket office of a charter service is located in the front part of the restaurant building.

Mr. Taunton was asked why the subject property had been acquired. He replied that personal property in the form of two boats and the lease of the dock space was included in the sale and that he "could control the parking." He stated that it is difficult to establish more docks on the bay because few areas are left. (Mr. Taunton's son Craig is a commercial fisherman. The testimony is not clear but the implications were that Craig utilizes the dock and its lease of the water site from the city, for commercial fishing. It also appears that charter fishing under the name of "Sea Trollers" uses the dock, parking lots and restaurant ticket office, presumably under some arrangement with the Taunton family.)

Mr. Neil Hundtoft, an appraiser employed by the Lincoln County Assessor's office, testified as an expert witness for the defendant. Mr. Hundtoft offered a market approach to value of the subject property, using two sales of bare land "comparables" and three sales of improved land for a land residual analysis.

Defendant's witness contended that the subject property, the restaurant and the access to the charter boat operation *should be viewed and valued as a single economic unit,* each part being utilized and supported by the other parts. The plaintiff's expert witness, Mr. Biddle, appears to lend credence to this view by his statement found in Plaintiff's Exhibit 1, at page eight:

"It would appear to me that these lots are critical to the

adjacent business [restaurant, ticket office, boat dock] for auto parking."

Mr. Hundtoft stated that the subject property currently provides parking spaces for the Spouting Horn Restaurant and for the charter service located therein and the subject property provides access to the charter service dock.

The witness also alleged that the economic unit is located in the center of a high density tourist area with the highest pedestrian count in the county. He emphasized that the subject property (commercial property with water frontage) is intimately related to Highway 101 and to waterfront property and all of his offered comparables were located on Highway 101 with one comparable being related both to Highway 101 and to water frontage. From the market comparison of bare land, Mr. Hundtoft found and demonstrated that the subject property should be valued at $17 per square foot for a total true cash value of $255,000. His land residual approach resulted in a determination of value between $15.50 and $68.47 per square foot. No adjustment for time or for location was offered.

Mr. Hundtoft also presented an income approach based upon an economic unit including the subject property, the restaurant and the charter service. This approach supported a calculation that the subject property should be valued at $18.71 per square foot, or $280,600 total.

The witness contended that the highest and best use of the subject property is a dual purpose use, capitalizing on the advantages of property fronting Highway 101. When questioned as to whether his estimate of value of the subject property would be the same if the restaurant was sold to a third party, he stated: "If the use is the same, it would not matter who owned the frontal property."

The plaintiff has relied upon the market approach to prove the true cash value of the subject property and has offered four comparable sales, two of which require over 200 percent adjustments and one requiring almost a 100 percent adjustment. A sale cannot be considered comparable when the adjustments are too great. *Bend Millwork v. Dept. of Rev.,* 285 Or 577, 592 P2d 986 (1979).

In addition to the great differences that required

adjustments, no adjustment was offered by plaintiff for differences in zoning. Although accepted as an expert witness and a person knowledgeable in the premises, Mr. Biddle's work left many more gaps than the defendant's. He was less articulate than Mr. Hundtoft and offered but little data in support of his analysis. In cross-examination, in several instances he relied only on "16 years' experience in the appraisal field."

This court agrees with Friedman, Ed., *Encyclopedia of Real Estate Appraisal* 5 (3d ed, 1978):

■     "* * * The appraiser is not required to estimate the *exact* value * * *; no one is capable of such a feat, * * *. * * * however * * * this probable value must be supported by facts and a logical analysis of relevant data."

■     The plaintiff has the burden of proving that the challenged assessment is incorrect. ORS 305.427. This burden has not been met. The preponderance of the evidence sustains the defendant. Therefore, the court affirms defendant's Order No. VL 82-312, finding that the true cash value of the subject property on January 1, 1981, for Tax Lot 1400 was $73,970; for Tax Lot 1500, $84,330; and for Tax Lot 1600, $84,330.

Defendant is awarded its costs.