IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

TOWN SQUARE LIMITED )
PARTNERSHIP, )
)
        Plaintiff, ) TC-MD 200057G
)
   v. )
)
UNION COUNTY ASSESSOR, )
)
        Defendant. ) **DECISION**

This personal property valuation case is before the court after trial on the subject

equipment's 2019–20 tax roll real market value.  D. Rahn Hostetter, attorney-at-law, appeared on

behalf of Plaintiff, and Plaintiff's principal, Alfred Adelberger, testified for Plaintiff.  Wyatt S.

Baum, attorney-at-law, appeared on behalf of Defendant, and Defendant, Cody Vavra, testified.

Plaintiff's Exhibits 1 to 4 and Defendant's Exhibits A to D were admitted.

## I.  STATEMENT OF FACTS

The subject equipment comprises the remaining personal property of a small grocery

store called Marketplace Family Foods ("Marketplace"), which operated briefly in La Grande.

The subject property includes both grocery store equipment and restaurant equipment used in

Marketplace's bistro.  (*See* Ex A.)  Plaintiff was Marketplace's landlord.

Marketplace purchased the subject property from an out-of-town dealer in 2016.  At that

time, the subject property was reconditioned, not new.  The reported purchase costs for the items

still remaining on the account on the assessment date total $422,670.  (*See* Ex A.)

By the end of 2017, Marketplace was financially distressed.  In December, Plaintiff

learned that Marketplace intended to seek bankruptcy protection.  Marketplace's lender,

/ / /

U.S. Bank, N.A., acquired ownership of the subject property sometime before March 2018, probably through foreclosure. (*See* Ex 1.)

In March 2018, Plaintiff and U.S. Bank began negotiating Plaintiff's purchase of the subject property, which was still located on premises owned by Plaintiff. Mr. Adelberger—an experienced developer, landlord, and restauranteur—judged that another grocery store at that address would fill an unmet need in the community and that owning the personal property would assist in re-leasing the premises. He estimated the subject property was worth no more than $55,000. Because the premises needed to be vacated before they could be re-leased, Plaintiff informed U.S. Bank it would charge a storage fee for the subject property beginning in April. After six weeks of negotiations, Plaintiff bought the subject property for $42,500 cash. As part of the deal, Plaintiff also paid $5,000 for personal property that U.S. Bank held on another of Plaintiff's premises, which Plaintiff's principal judged to be "worthless."

During the course of the negotiations, U.S. Bank shared with Plaintiff the report of an appraisal it had commissioned of the subject property. (Ex 2.) The appraisal report was dated December 12, 2017, and had an effective date of November 16, 2017. (*Id*. at 1.) It concluded the subject had a "Forced Liquidation Value" of $42,835 and an "Orderly Liquidation Value" of $65,945. (*Id*.) The report included the following definitions:

> "The Forced Liquidation Value is the estimated gross amount, expressed in terms of money, that could typically be realized from a properly advertised and conducted public auction, with the seller being compelled to sell with a sense of immediacy on an as is, where is basis, as of a specific date. The Orderly Liquidation Value is the estimated gross amount expressed in terms of money which could typically be realized from a sale, given a reasonable period of time to find a purchaser(s), with the seller being compelled to sell on an as is where is basis. * * *."

(*Id*. at 2.)

/ / /

Defendant placed a real market value of $299,510 on the 2019–20 for the subject property, exclusive of supplies. (Ex A at 1, 5.) Defendant testified that his staff determined that value using the 2016 purchase prices and "age/life tables for taxable personal property" developed by the Department of Revenue. (Ex D.) Those tables show depreciation schedules for numerous categories of personal property. According to Defendant, the Department of Revenue prepared them on the basis of market data. Defendant—who is an experienced appraiser as well as the county assessor—testified that liquidation value is not equivalent to market value.

At trial, Plaintiff requested a real market value of $65,945. Defendant requested that the 2019–20 tax roll be sustained.

## II. ANALYSIS

At issue here is the real market value of the subject personal property as of January 1, 2019. *See* ORS 308.250(1).[1] Because Plaintiff seeks a reduction in the value on the 2019–20 tax roll, it must bear the burden of proof by a preponderance of the evidence. *See* ORS 305.427.

A.    *Highest and Best Use*

Before considering market value, the court must resolve any issue regarding the property's highest and best use. *Freedom Fed. Savings and Loan v. Dept. of Rev.*, 310 Or 723, 727, 801 P2d 809 (1990). Tied up with the question of highest and best use is the question of whether assembled property on an account would be worth more if valued separately rather than together. *See Norpac Foods, Inc. v. Dept. of Rev.*, 18 OTR 41, 52–54 (2004). Assemblage may have a positive or negative effect on property's value. *Id*. at 54.

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

In the present case, Plaintiff valued all the personal property on the subject account collectively as a unit, whereas Defendant valued each item separately. However, neither party argued or presented evidence showing the effect of assemblage on the subject's value. The subject was not being used on the assessment date. The lack of evidence on this topic increases the uncertainty of both parties' value conclusions.

B.    *Valuation Evidence*

All real and personal property that is neither tax-exempt nor specially assessed "shall be valued at 100 percent of its real market value." ORS 308.232. Real market value "means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).

Here, the evidence of the subject's real market value includes an appraisal report, a sale of the subject, and depreciation tables that may be applied to the cost of the subject's components.

1.    *Appraisal Report*

Generally speaking, an appraisal report is competent evidence suitable for establishing real market value. *Yarbrough v. Dept. of Rev.*, 21 OTR 40, 44 (2012). The appropriateness of any particular valuation method used in the report is judged from "the character of the property and the availability of data necessary to apply the various method[s]." *Chapin v. Dept. of Rev.*, 290 Or 931, 936, 627 P2d 480 (1981). Hence, an appraisal report is only as strong as the data and reasoning on which it is based. Furthermore, an appraisal carries little weight where the appraiser is unavailable to testify and explain the adjustments made. *Caswell House Family P'ship v. Dept. of Rev.*, TC 3991, WL 162002 n 2 (Or Tax Mar 24, 1997).

In this case, the appraisal report in evidence would be inadequate to show real market value for any one of three reasons. Firstly, according to the report's cover letter, the report concludes to a "forced liquidation value" and an "orderly liquidation value." Both liquidation values by definition assume the seller is "being compelled to sell" in some fashion, but real market value assumes a sale "without compulsion" on the part of either the buyer or seller. *See* ORS 308.205(1). Secondly, the report does not present the data or reasoning on which it is based; aside from the appraiser's cover letter and credentials, it consists entirely of photographs and an inventory summarily assigning liquidation values to each of the subject's components. The court has no means to judge the correctness of those conclusory values. Thirdly, the appraiser who prepared the report was not present at trial and did not testify.

2.       *Sale of Subject Property*

"A recent sale of the property in question is important in determining its market value." *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). A sale price is "very persuasive" evidence of value if it is from a "recent, voluntary, arm's length" sale between knowledgable and willing parties. *Id*.

Whether a property's sale is "recent" depends on the similarity of the market conditions on the sale and assessment dates, as well the length of time between them. *Sabin v. Dept. of Rev.*, 270 Or 422, 426–27, 528 P2d 69 (1974). If the interval between the dates is too great, the sale is not recent because "it can be said as a matter of law that there was a change in conditions." *Id*. at 427. But if the interval is not so great, "reference must be made to the underlying conditions affecting value before such evidence can be rejected." *Id*.

In *Sabin*, our Supreme Court held that reference to underlying conditions was necessary where the interval was "almost two years"—thereby implying that such an interval was not so

great as to exclude the sale's being recent as a matter of law. *See Sabin*, 270 Or at 426–429. Furthermore, the court placed the burden on the party opposing the reliability of the sale price to introduce evidence of a change in conditions between those two dates. *Id*. at 428–29; *see also Bennett Family Tr. v. Deschutes Cty. Assessor*, TC–MD 120096C, WL 6621234 at *4 (Or Tax M Div Dec 19, 2012) (sale preceding assessment date by almost six months held recent where no evidence of market change).

Whether a property's sale is "voluntary" and "arm's-length" is of particular concern where the seller is a bank that acquired the property in connection with foreclosure. Such bank sales involve nontypical market conditions. OAR 150-308-0240(2)(c). For example, a bank's interest in the sale proceeds may extend only to the underlying debt, thus mitigating any incentive to bargain for a higher price. *See Kryl v. Lane County Assessor*, TC–MD 100192B, WL 1197444 (Or Tax M Div Mar 30, 2011) (holding sale by bank 61 days after acquiring property not arm's-length because speed and substantial discount from listing price suggested compulsion). Furthermore, a bank may place more value on immediate liquidity than a typical market participant and therefore have less incentive to list the property for an appropriate exposure period. However, where a property is listed for an extended period, its listing price can be good evidence of its maximum real market value even if the seller is a bank. *Brashnyk v. Lane County Assessor*, TC–MD 110308, WL 6182028 (Or Tax M Div Dec 12, 2011) (finding real market value equal to final listing price where bank sale occurred after five-year listing period).

In the present case, there is evidence of two sales of the subject property: Marketplace's purchase from a dealer in 2016, and Plaintiff's purchase from U.S. Bank in 2018. No evidence of a change in market conditions between the two sales was presented, implying the first sale

was still recent at the time of the second sale. *See Sabin*, 270 Or at 427. No evidence was presented that the subject property had become unfit for its intended use. Yet it sold in 2018 for only a tithe of its price in 2016: $42,500 instead of $422,670.

Besides the substantial discount, the circumstances do not inspire confidence that the 2018 sale price reflects the subject property's market value. Unlike the property in *Brashnyk*, the subject property was never listed—its sale was negotiated privately by Plaintiff and the bank. Like the property in *Kryl*, the subject property was sold quickly: the bank acquired the property sometime after Marketplace announced its intention of seeking bankruptcy protection in December 2017 and sold it to Plaintiff in April 2018. Moreover, Plaintiff had placed additional pressure on U.S. Bank by notifying it that a storage fee would be charged if the subject property remained on the premises.

The evidence does not provide a way to adjust for the nontypical market conditions surrounding the 2018 sale; therefore, that sale may not be considered as evidence of the subject's real market value. *See* OAR 150-308-0240(2)(c).

3.      *Cost-Factor Valuation*

Defendant put into evidence depreciation tables developed by the Department of Revenue for developing a cost-factor valuation of the personal property. Defendant admitted that valuation of personal property by that method was outside of his personal expertise. He could not testify to specific aspects of his cost-factor valuation of the subject property because that work had been performed by his deputy.

The evidence presented at trial in support of Defendant's cost-factor valuation would not sustain a burden of proof. However, the burden of proof in this case must be borne by Plaintiff. *See* ORS 305.427.

### III. CONCLUSION

Plaintiff's evidence of value is insufficient to bear its burden of proof. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal be denied. The subject's

2019–20 tax roll real market value is sustained.

Dated this _____ day of December 2020.

_____

POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at https://www.courts.oregon.gov/courts/tax*

*This document was signed by Magistrate Poul F. Lundgren and entered on December 23, 2020*